UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANKLIN M. GOLDMAN,      )
  Petitioner               )
                         )
       V.                )      Civil Action
                         )      No.. 04-CV-12712-MLW
DAVID L. WINN, WARDEN,      )
UNITED STATES OF AMERICA,   )
  Respondents            )

### GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION PURSUANT TO 28 U.S.C. §§ 2255 AND 2241

### Introduction

Respondents David L. Winn, warden of F.M.C. Devens, and the United States of America, through their attorney, Michael J. Sullivan, the United States Attorney for the District of Massachusetts, hereby file this motion to dismiss prisoner Franklin M. Goldman's petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2255 and 2241. Goldman's claims are legally without merit, and Goldman asserts no new facts that would merit an evidentiary hearing to evaluate. Accordingly, based on longstanding court precedent, this Petition should be dismissed without a hearing.

### RELEVANT FACTS AND PROCEDURAL POSTURE

On April 27, 1993, the petitioner was sentenced to serve 360 months incarceration, pursuant to his conviction in the matter of United States v. Franklin Goldman (No. 92-10229-AMD). He was sentenced in accordance with § 4B1.1 of the Federal Sentencing Guidelines, which is the career offender enhancement.

One of the convictions on which the career offender finding was predicated, was a case from August 5, 1977 in the Bristol County Superior Court. Presentence Report, hereinafter "PSR", filed separately under seal, at p.15. In this case the petitioner was convicted of kidnapping and attempt to commit a crime (extortion). On August 12, 1977 the petitioner filed a claim of appeal from his convictions, a claim of sentence appeal to the Appellate Division, and a motion to revoke and revise sentence. Judge Toomey's Memorandum of Decision, dated October 15, 2001, attached hereto as Exhibit A, at 1. On September 28, 1977 the petitioner filed a motion to appoint counsel for post-conviction relief and for a free transcript. Id. Promptly, on October 19, 1977, Judge Brogna, of the Bristol County Superior Court, denied all of the petitioner's motions. Letter attached hereto as Exhibit B, at 1. He denied the motion to revoke and revise sentence as he stated that defense counsel, at the time of sentencing requested sentence to be served concurrently with a sentence petitioner was already serving at the time. Id. He denied the motion for appointment of counsel because petitioner's privately retained attorney was still the attorney of record and had not yet been allowed to withdraw. Id. Judge Brogna then commented on the claim of appeal, stating that on the merits, he considered the claim of appeal to be "completely frivolous" as the evidence at trial, which took two weeks, was overwhelming against Mr. Goldman. Id.

On January 19, 1981, the Appellate Division of the Superior Court heard petitioner's sentence appeal, and it was dismissed. Exhibit A at 2. Petitioner then waited until April 14, 2000 to file a motion for a new trial. Id. At this time, the motion judge, who was not the sentencing judge, allowed so much of the motion as to allow revival of the August 12, 1977 motion for appeal. Id. The Appeals court however, on January 25,

2001 passed on the question of whether reinstatement of the petitioner's appeal was proper, as there was no record or transcript that had been produced.  Order of the Commonwealth of Massachusetts Court of Appeals, attached hereto as Exhibit C,  at 1. On February 15, 2001, the Trial Court Clerk issued notice that a trial transcript could not be produced.  Exhibit A at 2.  On July 5, 2001, Judge Toomey heard the petitioner's motion for a new trial, and noted that petitioner did not identify <u>ANY</u> reversible errors. Nevertheless, because petitioner had sought appeal initially and that appeal had never taken place, the court granted his motion.  <u>Id</u>. at 7.  On September 5, 2002 the Bristol County District Attorney's office entered a nolle prosequi in petitioner's new trial, citing insufficiency of the evidence in the 25 year old case.  Dismissal by Prosecution, attached hereto as Exhibit D, at 1.

Based upon this dismissal, petitioner argues that § 4B1.1 of the Federal Sentencing Guidelines does not apply to him and he has filed this motion pursuant to § 2255 and § 2241 to attack the validity of his sentence.

<u>**ARGUMENT**</u>

I.    <u>**NEITHER 28 U.S.C. § 2255 NOR 28 U.S.C. § 2241 AFFORD RELIEF**</u>

A.    **Goldman's Petition Is The Functional Equivalent Of A § 2255 Motion Attacking His Conviction And Sentence And Should Be Reviewed As Such.**

*Gate-keeping Provisions of 28 U.S.C. § 2255.*

By captioning his motion as a habeas corpus petition under 28 U.S.C. § 2241, Goldman seeks to circumvent the "gate- keeping provisions" of 28 U.S.C. § 2255. Petitioner concedes that he has previously filed a § 2255 petition and thus his current motion must meet the second and successive rule of the AEDPA.  Under the AEDPA, before a successive § 2255 motion may be considered by the district court, it must be

certified by a three judge panel of the court of appeals to contain either (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.  United States v. Barrett, 178 F.3d 34, 40-41 (1st Cir. 1999). Thus, in the matter before this court, the first task is to determine if the petitioner meets one of the two prongs of § 2255's gate keeping provisions.

Petitioner does not argue that a new rule of constitutional law applies to his case; thus, the second prong of the successive 2255 motion test does not apply.  As to the first prong, petitioner argues that his application contains the requisite newly discovered evidence.  However, this contention is incorrect.  Mr. Goldman has not presented any newly discovered facts that would preclude any reasonable fact finder from finding him guilty.  Instead he argues that the vacating of his underlying state conviction places the established facts in a different light so that they are more consistent with innocence than with guilt.  This however, does not make out a case of actual innocence.  Despite petitioner's repeated claims of innocence, no court has found him innocent.  The trial judge who heard his case found his appeal "completely frivolous" because the evidence against him was overwhelming.  Exhibit B.  Nor has there been a finding of a constitutional violation.  The petitioner's state offense was vacated because the record could not be located for an appeal, twenty five years after the fact of conviction.  Exhibits A and C.  Retrial was likewise not possible twenty five years after the fact.  Exhibit D.

However, there has never been a finding of actual innocence, and indeed, the only judicial finding on this record is that the evidence of guilt is "overwhelming."  Exhibit B.

Unfortunately, collateral attack on decades old convictions has become a recent trend in federal litigation.  As noted by Judge Lynch, the sentencing guidelines have led to a cottage industry of diligent defense counsel seeking to vacate old state court convictions in order to reduce a federal sentence.  U.S. v. Brackett, 270 F.3d 60, 64-65 (1st Cir. 2001).  This has imposed a massive burden on the state courts, which are now faced with a flood of petitions from federal defendants and prisoners attempting to vacate state court convictions.  Id.  Predictably, as time passes and particularly as state sentences are completed, the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially.  This is particularly true of cases from the era in which the instant petitioner was convicted, as the use of computers and word processing equipment was not wide spread.  In particular because of Special Rule of the District Courts 211(A)(4) (1997), where the records of proceedings may be destroyed after two and one half years, this is a particularly vexing problem.  Id.

Petitioner argues that based upon the findings of Judge Toomey in his decision on the petitioner's motion for new trial, Exhibit A, this court should assume his late attempt to challenge his state court conviction was based upon actual innocence.  However, the record shows otherwise.  In Footnote two of the decision upon the motion for new trial, Judge Toomey specifically states, "this court has no appellate function and does not, therefore, address whether or not the trial judge's denial of the defendant's motions for transcript and appellate counsel was error."  Exhibit A at 5.  Judge Toomey noted that the defendant had not articulated any error in his trial that might have been remedied by

conventional appellate review, id. at 6, and that he did not find any constitutional violation such as ineffective assistance of counsel that would have created a cloud of doubt over the original state conviction.  Id (passim).  Nothing in the process by which a new trial was granted provides any indication that petitioner was actually innocent of the underlying charges.

*Statute of Limitations*

Additionally, the petitioner has failed to meet the one-year statute of limitations on subsequent § 2255 applications.  While § 2255 allows a prisoner in custody of a federal court to petition the court that imposed the sentence to vacate, set aside or correct the sentence, the limitation period begins with the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which a right was newly recognized by the Supreme Court; or,
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

Here, the only possible relevant date is "is the date on which the facts supporting the claim presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.   The United States Supreme Court has recently interpreted this date in the context of a collateral attack on a conviction underlying a career offender sentence.  In Johnson v. United States, 2005 WL 742305 (U.S.),  the Supreme Court denied a petition set aside a sentence as a career offender on the ground that the predicate state convictions had been vacated because the petitioner had failed to act with due diligence.  The Court held that a prisoner must act with due diligence in attacking his prior state court

6

convictions, and that if they could met that burden, a vacatur of a prisoner's prior state convictions was a matter of "fact," which could start renewed one-year limitations period for attacking a federal sentence under the 2255.

Therefore, in <u>Johnson</u>, the Supreme Court held that acting with due diligence in attacking prior state court convictions was of the utmost importance, and failure to do so would preclude renewal of the limitations period.  Addressing the question of what constitutes due diligence the Court held that "diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging the prior conviction with its potential to enhance the later sentence … and settling on the date of judgment as the moment to activate due diligence seems best to reflect the statutory text and its underlying concerns."  <u>Id</u>. at 9.  Applying <u>Johnson</u> to the instant case, it is clear that the petitioner does not fit within the one-year statute of limitations in which he must bring his claim.  Goldman was convicted on December 22, 1992 on charges of conspiracy to distribute cocaine and possession of cocaine with intent to distribute.  PSR at 1,3.  Thus, according to <u>Johnson</u>, due diligence began to run at that time.  Despite the running of this clock, the record indicates that Goldman did not file any motions regarding his prior state court convictions until April 14, 2000.  This lack of diligence by the petitioner cannot be reconciled with the Supreme Court's holding in <u>Johnson</u>.  This is particularly true in the instant case, where the petitioner has long maintained his innocence to the state offense, and therefore was long aware of the "facts" supporting his claim to vacate the state conviction.

Even if this court were to find that Goldman acted with due diligence, he would still fail the time calculus set forth in <u>Johnson</u>.  Under <u>Johnson</u>, a petitioner would have

one year from the date he received notice of the vacatur to challenge his career offender status. Johnson at 10. On September 5, 2002, the Bristol County District Attorney's office entered a nolle prosequi in Goldman's new trial. Exhibit D at 1. However, Goldman did not file the motion currently before this court until December 23, 2004, a full two years and three months later. Thus, he is clearly outside the statute of limitations set forth in 28 U.S.C. §§ 2255, 2241, as well as the Supreme Court's interpretations in Johnson. Accordingly his petition should be dismissed.

*Cause and Prejudice Standard*

Petitioner Goldman faces further hurdles to his successive § 2255 motion. Even if this court were willing to look past the aforementioned reasons to deny the motion, petitioner must show cause and prejudice for his failure to previously raise his claim of innocence from the state conviction underlying his career criminal enhancement. See Brache v. United States, 165 F.3d 99, 102 (1st Cir. 1999). Based upon the Supreme Court's ruling in Bousley v. United States, 523 U.S. 614 (1998), we know that a § 2255 petition must meet the cause and prejudice standard if it presents a claim not made earlier, and the First Circuit in Sustache-Rivera v. United States, 221 F.3d 8, 17 (1st Cir. 2000) extended the Bousley cause and prejudice standard equally to § 2255 and § 2241 claims. In the instant case, the petitioner does not aver any claim of cause and prejudice. Petitioner would presumably argue that denial of his motion to appoint counsel and for a transcript violated his constitutional right to counsel, and this created significant cause and prejudice for his failure to state his claim of innocence in his first § 2255 motion. However, as supported by the record, the trial judge denied those motions for good cause. Exhibit B at 1-2. In particular the trial judge noted that private counsel was still retained

and should be allowed to withdraw before a motion to request new counsel could properly be heard.  Id.  Additionally, defendant's pro se motion requesting sentence appeal was heard and denied by the Appellate Division of the Superior Court in 1981.  Exhibit A t 2.  Petitioner then waited nineteen years, until 2000, to file a motion for a new trial.  Id.  Thus it is clear that Petitioner was not denied assistance of counsel, as petitioner did not even attempt to obtain counsel for a period of nineteen years.

Additionally, it is clear that at the very least Petitioner has had counsel since 2000, when he brought his motion for a new trial before Judge Toomey.  This puts him well over the one-year statute of limitations to file a § 2255 motion.  This petitioner's failure to state his claim of innocence to the state convictions is due to him and not to § 2255.  Barrett, 178 F.3d at 53.  Additionally, according to Bousley, cause for not filing a claim earlier cannot be explained by futility.  Id.  Thus a petitioner must put forth all of his arguments when they are known to him regardless of the potential futility of them.  It is clear that in the instant case petitioner did not make the argument of being innocent of the state conviction despite as defense counsel notes, his long knowledge of the facts surrounding that claim.  Thus he fails to show cause and prejudice in any colorable manner.

**B.    The Savings Clause Of § 2241 Applies Only In The Rare And Exceptional Cases Of "Actual Innocence" In Order To Prevent A Miscarriage Of Justice.**

Since Goldman may not proceed with his successive § 2255 petition, we turn to his argument that the savings clause of § 2255 permits him to proceed under § 2241 as a means of seeking relief.  Under the statutory language of § 2255, the use of petitions under § 2241 is limited to situations where the remedy is inadequate or ineffective to test

the legality of the petitioner's detention; and this circuit has accepted this limitation. <u>See</u> <u>Barrett</u>, 178 F.3d at 49; <u>Sustache-Rivera</u>, 221 F.3d at 15; <u>In re Dorsanvil</u>, 119 F.3d 245 (3rd Cir. 1997). Under the First circuit's reasoning in <u>Barrett</u>, <u>Brackett</u>, and <u>Sustache-Rivera</u>, it is clear that a petition under § 2255 can not become inadequate or ineffective, thus permitting the use of § 2241, merely because a petitioner cannot meet the AEDPA second or successive requirements. Such a result would make Congress's AEDPA amendment of § 2255 a meaningless gesture. In <u>Barrett</u> the court cites to the Second Circuit's decision in <u>Triestman v. United States</u>, 124 F.3d 361 (2d Cir. 1997), and credits the argument that a petitioner can seek § 2241 habeas corpus review in the set of cases in which the petitioner cannot utilize § 2255, and in which the failure to allow for collateral review would raise serious constitutional questions. They also credited the notion that serious constitutional questions are raised when a person can prove his actual innocence on the existing record, and could not have effectively raised his claim of innocence at an earlier time. <u>Id</u>.

### Actual Innocence

Goldman's final attempt to side step the gate-keeping provisions of § 2255 manifests itself in his meritless assertion that he is "factually" and "legally" an innocent man. Goldman offers no support for this contention, however, beyond his claim of innocence. Goldman is not "actually innocent" as that term has been defined by the Supreme Court, nor does his petition fit within the rare and exceptional cases which permit the district court to entertain jurisdiction pursuant to § 2241's savings clause. In <u>Bousley</u>, the Supreme Court defined actual innocence as "factual innocence, not mere legal insufficiency." <u>Bousley</u>, 523 U.S. at 623-624. Several courts of appeals have held

that in rare circumstances, the remedy under § 2255 may be inadequate or ineffective such that a § 2241 petition will be available to a federal prisoner.  See e.g. Charles v. Chandler, 180 F.3d 753 (6th Cir. 1999); In Re Davenport, 147 F.3d 605 (7th Cir. 1998); In Re Dorsainvil, 119 F.3d at 251; In Re Hanserd, 123 F.3d 922 (6th Cir. 1997); Trietsman v. United States, 124 F.3d at 361. All of these cases, however, were based on the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995), in which the Court adopted a more restrictive interpretation of 18 U.S.C. § 924(c)(1).  Bailey, 516 U.S. at 142-143.  The government's research has disclosed no additional case law beyond Bailey-related cases in which an "actual innocence" claim has led a court to permit recourse to § 2241 because § 2255 was inadequate or ineffective.  As the Court in Charles stated, "no circuit court has to date permitted a post-AEDPA petitioner who was not effectively making a claim of 'actual innocence' to utilize § 2241 (via § 2255's 'savings clause') as a way of circumventing § 2255's restrictions on the filing of second and successive habeas petitions."  Charles, 180 F.3d at 757.

Thus, petitioner is not able to raise any serious constitutional issues, as he cannot prove his actual innocence on the existing record.  Although he had his underlying state convictions vacated, he did not receive any order declaring him innocent or acquitting him of the charges.  Instead it is quite clear from the record before this court that the only reason the Bristol County District Attorney's Office declined to re-prosecute Mr. Goldman is because the record of the case had been destroyed.  (Exhibit E at 1). Additionally, there was no finding of any constitutional violations, nor did the petitioner aver any errors that would have allowed the appeals court to even entertain the possibility of a reversal.  Further proof that this is not a case of actual innocence is a finding by the

trial judge in Mr. Goldman's state court conviction.  In response to Mr. Goldman's motions, Judge Brogna declared the claim of appeal to be frivolous, and that the evidence at the trial, which took two weeks, was overwhelming against Mr. Goldman.  (Exhibit C at 1).  Thus it is clear, that Mr. Goldman's claim of actual innocence should not be credited.  Not even Judge Toomey, who granted the petitioner a new trial, was willing to credit that claim.  Thus, it is clear that the petitioner fails to show actual innocence, and when taken in the context of a § 2241 motion, this court should recognize that § 2241 "is not an additional, alternative or supplemental remedy to that prescribed under 2255," and should deny the petitioner's motion.  Charles, 180 F.3d at 758.  As the First circuit has stated, "only claims of actual innocence, defined as factual innocence, not mere legal insufficiency, will have a mechanism for review."  Barrett, 178 F.3d at 57.

*Petitioner Could Have Raised His Claim at an Earlier Time*

Petitioner also fails to qualify for relief under § 2241 as he could have effectively raised his claim of actual innocence at a much earlier time, yet did not.  In Sustache-Rivera, 221 F.3d 8 (1st Cir. 2000), the First circuit ruled that a petitioner who failed to raise a claim in an earlier habeas petition must show cause and prejudice for his failure to have previously made that claim.  As argued in the discussion of § 2255, petitioner does not have a colorable claim of cause and prejudice.  His post-trial motions in the State court were heard and denied with good cause by the trial judge.  (Exhibit C at 1-2).  His sentence appeal was heard and denied by the Appellate division of the Superior Court in 1981.  (Exhibit B at 2).  His original § 2255 Habeas petition was heard and denied, and petitioner then waited until the year 2000 to file a motion for a new trial.  It is clear that at the very least Petitioner has had counsel since 2000, which puts him well over the one-

year statute of limitations to file a § 2255 motion.  Thus petitioner's failure to state his

claim of innocence to the state convictions is due to him and as held by the Supreme

Court in <u>Bousley</u> cannot be attributed to the futility of his argument.

Finally the government turns to the petitioner's argument that the unreported case

of <u>Little v. United States</u>, 2002 WL 1424581 (D.Mass.) should carry the day.  Simply,

petitioner misreads the holding of that case.  In <u>Little</u> the court was strongly swayed by

the government's agreement that the defendant was actually innocent of having any prior

convictions that supported an enhanced sentence.  <u>Id</u>. at 3.  In the instant case, the

government strongly believes that there is no evidence of actual innocence and thus a

comparison to <u>Little</u> is misguided and incorrect.  As the court in <u>Little</u> pointed out, there

is a general rule that legal arguments not raised on appeal are not available for further

collateral review.  <u>Id</u>.  The First circuit has set up specific tests to pass the gate-keeping

functions of § 2255 and § 2241, and this petitioner cannot meet them.

**C.    Petitioner has another conviction that would qualify as the predicate for the career offender provision, thus his arguments are moot.**

In making the determination that the petitioner was a career offender, the

probation department found that at the time his latest offense was committed, the

defendant was a career criminal.  <u>See</u> PSR, at 17.  The PSR implicitly relied on the

August 5, 1977 conviction (¶69) and the July 6, 1976 conviction (¶ 71).  The August 5,

1977 conviction has been vacated.  Regardless, the petitioner is still a career offender,

defined in § 4B1.1, as even without the vacated offense, he had two offenses that would

have qualified at the time of sentencing, for the career criminal enhancement.

Specifically, on September 2, 1970, the petitioner was indicted in the United

States District Court for the District of Massachusetts (Docket #70-274-F) on charges of

unlawful sale of a narcotic drug.  PSR at 13 (¶ 64).  He was found guilty on January 6, 1971, sentenced to eight years of incarceration and released to parole on September 16, 1975.  Id.  On March 30, 1976 the U.S. Parole Commission ordered Goldman to be reinstated to active parole supervision, and he was under active supervision until December 10, 1980, when his case was closed per the U.S. Parole Commission.  PSR at 14.  Thus, the petitioner was under criminal justice supervision stemming from his January 6, 1971 conviction until December 10, 1980.  According to 18 U.S.C. § 4A1.2(e), which defines the term "applicable time period," "any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted.  Also count any prior sentence of imprisonment exceeding one year and one month, whenever, imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period."  The federal sentence from which Goldman now appeals stems from an indictment that was entered on August 12, 1992.  Thus the fact that Goldman was under active parole supervision within 15 years, puts his January 6, 1971 conviction well within the time period referred to in §4A1.2(e).

Therefore, even if the instant petition were timely and even if the vacatur of the 1977 conviction were to be considered, petitioner's 1971 conviction (PSR ¶64) combined with the 1976 conviction (¶ 71) still result in a career offender status.  Although the government is not contending that this court reopen sentencing relating to Mr. Goldman's conviction, this effectively makes the petitioner's arguments regarding the applicability of the career offender provision, and thus his right to utilize §§ 2255 and 2241, moot.

**D.    Assuming, <u>Arguendo</u>, That Petitioner Has Met Jurisdictional Requirements, He Fails To Present A Cognizable Claim Of Relief And His Petition Should Be Denied Without A Hearing.**

A habeas petitioner has the burden of establishing that he is entitled to a hearing on his § 2255 petition.  <u>See</u> <u>Barrett</u>, 965 F.2d at 1186.  A hearing is unnecessary when the record conclusively refutes the asserted claims.  <u>See</u> <u>Carey v. United States</u>, 50 F.3d 1097, 1098 (1st Cir. 1995). "[I]n order to secure an evidentiary hearing, ... [a petitioner] must tender more than conclusory allegations."  <u>David v. United States</u>, 134 F.3d 470, 478 (1st Cir. 1998).  A court may summarily dismiss a petition containing specific factual allegations if the allegations are insufficient "in light of the relevant constitutional standards and the record."  <u>Barrett</u>, 965 F.2d at 1186, <u>quoting</u> <u>Moran v. Hogan</u>, 494 F.2d 1220, 1222 (1st Cir. 1974).  Further, a court may dismiss a § 2255 petition relying on its own recollection of prior events.  <u>See</u> <u>Cohen v. United States</u>, 996 F. Supp. 110, 112 (D. Mass. 1998).

Goldman has not met requirements for either a § 2255 or § 2241 petition, and this Court should deny both his request for a hearing on his petition and his petition.  There may be cases of federal prisoners who, at the time of federal sentencing, were actually innocent of the state crime for which they had been convicted, and it may be that such prisoners could not have reasonably in the exercise of due diligence have become aware of facts to prove their innocence until later.  However this court's ruling to deny petitioner Goldman's successive habeas motion does not bar those potentially meritorious claims from going forward.  Instead, in ruling to deny petitioner's motion, this court protects the interest of justice in the finality of judgments.  As the First Circuit said in <u>Barrett</u>, there is a lesson to be learned from a case such as this.  A first petition for post-

15

conviction relief under § 2255 should raise all available claims.  Id.  Failure to raise a claim does not permit an end-run around the requirements of § 2255 by resort to § 2241. Id.  There is only one bite at the post-conviction apple unless a second or successive petition can show one of two things: a new rule of constitutional law, or newly discovered evidence sufficient to establish by clear and convincing evidence, on the whole record, that no reasonable fact finder would have returned a guilty verdict.  Id. Here the petitioner does not present any newly discovered evidence.  Nor can he show that no reasonable fact finder would have returned a guilty verdict in his case.  In fact, the opposite is true, as Judge Brogna stated that the evidence against him was overwhelming. Exhibit A at 1-2.  Instead, the petitioner seeks an end-run around the gate-keeping requirements of § 2255.  He waited twenty-three years after his conviction in Bristol County Superior Court to file his appeal, and after being blessed with an order vacating it he then waited another four years to file the motion currently before this court. Furthermore, review of the petitioner's PSR reveals that he had another offense that would have qualified for inclusion under the career criminal enhancement.  Petitioner argues that he has been denied justice, but in reality, it would be a miscarriage of justice to allow this petition.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the

Court dismiss Goldman's petition of habeas corpus pursuant to 28 U.S.C. §§ 2255 and

2241 without conducting an evidentiary hearing.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:    ___/s/ Nancy Rue_____.
Nancy Rue
Assistant U.S. Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA  02210

DATED:    May 31, 2005

## COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.

SUPERIOR COURT
CRIMINAL ACTION
NOS. 54316, 54318

BRISTOL, SS SUPERIOR COURT
FILED

OCT 1 5 2001

MARC J. SANTOS, ESQ.
CLERK/MAGISTRATE

**COMMONWEALTH**

**vs.**

**FRANKLIN GOLDMAN**

## MEMORANDUM OF DECISION UPON
## DEFENDANT'S MOTION FOR NEW TRIAL

After hearing, and based upon the various submissions of counsel, the docket, and other items

located in the Superior Court Clerk's files, the court will enter the following findings of fact.

### FACTS

The chronology material to the issues presented by the motion is:

| | | |
|---|---|---|
| February 9, 1976 | - | Defendant was indicted for kidnaping and attempted extortion. |
| July 26, 1977 | - | Defendant waived his right to trial by jury. |
| August 5, 1977 | - | Defendant was found guilty by the trial judge upon both indictments, and was sentenced to two concurrent five to ten year terms in state prison, concurrent with a twenty-five to forty year sentence then being served. |
| August 12, 1977 | - | Defendant filed, *pro se*, a claim of appeal from his convictions. |
| August 15, 1977 | - | Defendant filed, *pro se*, a claim of sentence appeal to the Appellate Division. |
| August 26, 1977 | - | Defendant filed, *pro se*, a motion to revoke and revise sentence. |

A True Copy By Photostatic Process
Attest:

Asst. Clerk of Courts

Bristol Criminal Action                                    -2-

September 28, 1977     -     Defendant filed, *pro se*, a motion to appoint counsel for post-conviction purposes and a motion for free transcript for appellate purposes.

October 19, 1977       -     Without hearing, the trial judge denied the motion for counsel and transcript for the reasons that "privately retained [trial defense counsel] . . . has not been allowed to withdraw," and "I consider the claim of appeal to be completely frivolous." The judge also noted that the case had taken two weeks to try.

November 10, 1977      -     The trial judge allowed trial defense counsel's motion to withdraw as counsel, but did not revisit defendant's request for appellate counsel.

January 19, 1981       -     The Appellate Division of the Superior Court dismissed defendant's sentence appeal.

April 14, 2000         -     Defendant filed the instant motion for new trial.

September 8, 2000      -     Due to the retirement of the trial judge, the Regional Administrative Judge assigned the present motion judge to determine the motion for new trial.

September 27, 2000     -     After hearing, the motion judge allowed so much of the motion as sought revival of the August 12, 1977, notice of appeal and directed that the appeal be processed in accordance with the Mass. Rules of Appellate Procedure as if the claim had been timely filed.

October 18, 2000       -     The appeal was entered by the Trial Court Clerk in the Appeals Court.

January 25, 2001       -     The Appeals Court vacated the entry of the appeal and remanded the matter to the Trial Court for the reason that "the assembly [of the record] was premature, there being no transcript or reconstructed record." The Appeals Court's action was "without prejudice to the reentry of the appeal [should assembly be properly effected]."

February 15, 2001      -     The Trial Court Clerk notified present counsel for the parties that a trial transcript was not available and that any further appellate activity would need to comply with Mass. R. App. P. 8(c).

July 5, 2001           -     The instant motion was heard by the motion judge.

## DISCUSSION

We encounter today the vexing question of the remedy, if any, for defendant's faultless loss of his right to appellate review of his conviction. The circumstances that brought the case to this point are set forth in their entirety supra, but a number of those circumstances are of particular pertinence to the resolution of the question. That number follow:

1.     Defendant's trial was not uncontested; it extended for at least two weeks;

2.     The trial judge sat jury-waived;

3.     Defendant filed a timely claim of appeal;

4.     When confronted with defendant's pro se motions designed to further his efforts to obtain appellate review of the trial proceedings, the trial judge denied the motions without hearing and on the grounds that trial defense counsel still represented defendant, that counsel had "not asked for a transcript" and that "[f]urthermore, I consider the claim of appeal to be completely frivolous;"

5.     Before his departure, trial defense counsel informed defendant that because of the concurrency of his sentences, appeal, even if successful, would not avail defendant. Counsel did not address the merits of an appeal in his communication with defendant;[1]

6.     Shortly after the denials referenced in Para. 4, supra, the trial judge permitted trial defense counsel to exit the case, but omitted to reconsider the defendant's request for successor counsel;

---

[1]Although counsel's 1999 affidavit asserts that counsel's discussion with defendant occurred in "the latter part of 1997, or the early part of 1998," other recitations in the affidavit and other documentary exhibits suggest that those dates are misprints and that the communications discouraging appeal actually took place in 1977 or 1978.

7.      The parties have stipulated, during the hearing on the instant motion for new trial,

that no transcript of trial proceedings can be produced (the court reporter's notes

having been destroyed six years after trial) and no reconstruction of the trial record

can be effected (the trial judge having retired, the trial defense counsel having

asserted that "the file of that case has probably been disposed of," and the District

Attorney's Office having reported that its file no longer exists).

We are faced, then, with the fact that the Appeals Court has demanded, quite correctly, that

either a transcript or a reconstructed record be produced as a precondition to appellate review of

defendant's conviction.    Neither a transcript nor a reconstructed record can be produced.

Accordingly, defendant's predicament is that, through no fault of his own and contrary to his wishes

expressed consistently since the time of his conviction, he cannot be afforded the appellate review

to which he was, and is, entitled.

Under these circumstances, "justice may not have been done," Mass. R. Crim. P. 30(b), and

a new trial is an appropriate, and perhaps the only, way to insure that the interests of justice -- the

defendant's personal interest and the Commonwealth's institutional interest -- are realized. See eg.

Commonwealth v. Harris, 376 Mass. 74, 77-78 (1978).

This conclusion is compelled by the reality that defendant's desire to test the legitimacy of

his conviction is not a recent contrivance, driven, as are many these days, by the hope that records

have been lost, memories have failed and the evidence has been eroded by the passage of time.

Rather, defendant sought, ab initio, to subject his conviction to the appellate scrutiny to which the

law entitled him. He timely filed a notice of appeal; he timely sought appellate counsel; he timely

sought sentence appeal; he timely sought revocation and revision. Each effort was blocked by the trial judge.[2]

There is also the concern that "justice may not have been done" because trial defense counsel, in omitting to pursue the appeal desired by defendant, may have grounded his inaction on inappropriate considerations. As expressed in both his 1999 affidavit and his 1993 letter to defendant, trial defense counsel recollected that he regarded an appeal to be unwarranted because defendant's sentences were concurrent with a much lengthier sentence then being served. Trial defense counsel does not appear to have included, in his calculus as to the advisability of an appeal, the substantive merit of such an appeal. His subsequent withdrawal as counsel for defendant demonstrates that, despite defendant's patent interest in pursuing an appellate challenge to the trial proceedings -- as demonstrated by the pro se claim of appeal, pro se motion for free transcript, pro se motion for the appointment of counsel, pro se motion to revoke and revise and pro se claim of sentence appeal -- trial defense counsel was plainly disinclined to assist defendant in obtaining the review defendant repeatedly sought. Accordingly, his post-trial advice to defendant, which focused upon the impracticality of an appeal rather than on its viability as a device to challenge the trial doings, was consistent with his indisposition to an appellate effort. At bottom, trial defense counsel,

---

[2]This Court has no appellate function and does not, therefore, address whether or not the trial judge's denial of defendant's motions for transcript and for appellate counsel was error. This Court is, however, charged by Rule 30(b) with the duty of determining whether or not "justice may not have been done" in the preceding proceedings. In that context, the Court notes that the trial judge's rationale for his conduct -- to wit, that trial defense counsel had not sought post-conviction relief and that an appeal was without merit -- is more than a bit troubling in that the trial judge, shortly thereafter, permitted trial defense counsel to disappear and then obstructed appellate review of his own doings at the two week bench trial by concluding that defendant was not to have a transcript because his proposed appellate claims were "frivolous." There is, at the least, the appearance of a self-serving animus in such rulings.

with the endorsement of the trial judge, left defendant to his own devices with respect to the pursuit of an appeal because counsel thought that the sentence structure was favorable to defendant[3]

Although defendant has not articulated an error or errors in his trial that might have been remedied by conventional appellate review, that omission gives this Court little pause. This is not a case where defendant bears fault for not perfecting his appeal. Contrast, Commonwealth v. Pudder, 41 Mass App. Ct. 930, 931 (1966). This is not a case where reconstruction is possible. See p. 4, para. 7, supra. This is not a case where trial defense counsel or trial prosecutor or trial judge can contribute to the identification of potential appellate issues. Contrast, Commonwealth v. Sheffield, 16 Mass. App. Ct. 342, 347-349 (1983). And, to suggest as does the Commonwealth, that other counsel, who have, in the interim, represented defendant in matters litigated in foreign jurisdictions, could have jumped into the breach and revived the defendant's appeal is both to deny the realities of the practice of criminal law on behalf of an indigent and to cloak defendant with a legal sophistication that is, on this record, wholly speculative.

Accordingly, this Court rejects the proposition that defendant's motion for new trial is subverted by his omission to identify reversible errors infecting his trial. There are occasions when such an omission may defeat a Rule 30(b) motion, see eg. Commonwealth v. Kelly, Worcester Sup. Ct. Nos. 87-00664 and 87-00666 (September 7, 2001), but the circumstances at bar are significantly different from Kelly and so, too, shall be the result. See, generally, Commonwealth v. McWhinney, 20 Mass. App. Ct. 444, 446-447 (1985).

---

[3]There is, of course, nothing wrong with counsel assessing the merits of an appeal and concluding that the likelihood of success on the appeal is so de minimus and the sentence structure so favorable that little would be gained by pressing an appeal. At bar, however, there is no evidence that counsel assessed the merits of an appeal. In fact, his writings reflect his purposeful decision to eschew such a perspective.

Bristol Criminal Action                    -7-                    Nos. 54316, 54318

## CONCLUSION

For the reasons aforestated, defendant's Motion For New Trial is **ALLOWED**.

Daniel F. Toomey
Justice of the Superior Court

DATED:   October  12, 2001

Ex. A

COMMONWEALTH OF MASSACHUSETTS BRISTOL. SS SUPERIOR COURT
THE SUPERIOR COURT
BOSTON

FILED

Oct. 19, 1977

VINCENT R. BROGNA
ASSOCIATE JUSTICE

WILLIAM P. GRANT
October 14, 1977 CLERK OF COURTS


William P. Grant, Esq.
Clerk of Courts
P.O. Box 547
Taunton, MA   02780

RE:  Commonwealth v. Franklin Goldman
     Nos.  54316, 54318

Dear Mr. Grant:

In the above entitled cases will you please make the
following entries regarding the defendant's motion.  All
have been acted upon by me without a hearing.

   1.  The Motion to Revoke and Revise the sentence
       is denied.

       At the time of the sentencing, his counsel requested
       sentencing to be served concurrently with the sentence
       he was presently serving at Walpole.

   2.  The plaintiff's (Franklin Goldman) Motion for
       Appointment of Counsel is denied.

       Jack I. Zalkind, Esq., Fifteen Court Square, Boston,
       (who was privately retained) is attorney of record and
       has not been allowed to withdraw.

   3.  The Defendant's Motion for Free Transcript is denied.

       The defendant's attorney of record has not asked
       for a transcript.  Furthermore, I consider the claim
       of appeal to be completely frivolous.  The evidence
       at the trial, which took two weeks, was overwhelming
       against Mr. Goldman.  Furthermore, he was apprehended
       by the police at the place where the supposed
       ransom money was to be dropped off.

October 14, 1977
William P. Grant, Esq.
Page 2

     4.  The Petitition for Writ of Habeas Corpus Ad
         Testificandum is denied in view of my actions
         on the accompanying motions.

Will you please send copies of this letter to Mr. Goldman,
P. O. Box 43, Norfolk, MA 02056 and to Jack I. Zalkind, Esq.,
and the District Attorney.

                    Very truly yours,

                    Vincent R. Brogna

VRB/kt

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

A.C.  2000-P-1638
(Bristol Superior Court
Criminal:54316 & 54318)


COMMONWEALTH

vs.

FRANKLIN M. GOLDMAN


ORDER

Passing the question whether the trial judge's reinstatement
of the defendant's appeal from his 1977 conviction was proper,
the appeal from the conviction is vacated as the assembly was
premature, there being no transcript or reconstructed record. All
papers already transmitted to this Court are to be returned to
the clerk of the trial court until the deficiencies in the
transcript or the record have been cured. The foregoing orders
are without prejudice to the reentry of the appeal in this Court
following the issuance of a new notice of the assembly of the
record.


By the Court, (Porada, J.)

Assistant Clerk


Entered: January 25, 2001

Commonwealth of Massachusetts

Bristol, ss.                                 Indictments Nos.
                                             54316, 54318

Commonwealth
v.
Franklin Goldman

## Dismissal by Prosecution

Pursuant to Mass. R. Crim. P. 16 (a), the Commonwealth
enters a nolle prosequi of the above charges, citing as reason
therefor the insufficiency of the evidence.

Respectfully submitted,

For the Commonwealth,

Kevin Connelly
Assistant District Attorney
Bristol District
888 Purchase Street
New Bedford, MA 02740
(508) 997-0711

September 5, 2002

## Certificate of Service

I hereby certify that I have today served upon counsel for the defendant the Commonwealth's Dismissal by Prosecution, along with supporting documents, by mailing a copies, postage prepaid, to the following address:

Robert M. Goldstein, Esq.
10 McGrath Highway
Quincy, MA 02169

Respectfully,

*Kevin Connelly*

Kevin Connelly
Assistant District Attorney

Date: September 5, 2002