UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANKLIN M. GOLDMAN, <br>       Petitioner | ) <br> ) <br> ) |
| v. | )   Civil No. 04-CV-12712-MLW |
| | ) |
| DAVID L. WINN, WARDEN, <br> UNITED STATES OF AMERICA, <br>       Respondents | ) <br> ) |

### Goldman's Memorandum in Reply to
### Government's Opposition to §2241 Petition

      It is beyond peradventure that a "defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated," Johnson v. United States, 125 S.Ct. 1571, 2005 WL 742305 (2005) (defendant was sentenced as a career offender pursuant to U.S.S.G. §4B1.1), citing Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994) and Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), assuming he possesses a viable jurisdictional vehicle to secure the resentencing to which he is otherwise entitled.[1] Without the Bristol county conviction that has since been vacated, Franklin Goldman is not a career offender.[2] The question in this case therefore becomes whether any jurisdictional vehicle exists pursuant to which Frank Goldman can secure what he is otherwise rightly entitled to—a new sentencing hearing. For the reasons discussed *infra*, as well as within his

---

[1]. Indeed, in Johnson, wherein (like Goldman) the defendant was sentenced as a career offender pursuant to §4B1.1, the government conceded that if Johnson timely filed his §2225 petition then he was entitled to a federal resentencing given that one of the judgments supporting his enhanced sentence had been vacated. Johnson, 125 S.Ct. at 1577.

[2]. The government's argument to the contrary—i.e., that 1971 conviction qualifies for career offender purposes because the Petitioner was on parole until 1980, and he therefore was "incarcerated" within the 15 year pertinent period of time—is wrong. The government has not cited even a single case to support this assertion and the relevant sections of the Guidelines and existing case law support the common sense conclusion that being on "parole" does not constitute "imprisonment" for purposes of counting convictions for career offender purposes. See Section III *infra*.

1

original petition, the Petitioner respectfully contends that 28 U.S.C. §2241 is a viable jurisdictional vehicle to secure the resentencing.

I. *The "cause and prejudice" hurdle does not apply because the Petitioner is "actually innocent" of being a career offender and is "actually innocent" of the state offense that served as the predicate conviction.*

The government argues that Goldman's claims are barred because he has not established "cause and prejudice for his failure to previously raise his claim of innocence from the state court conviction underlying his career criminal enhancement." (Government Opposition at 8-9, 12-13). First, when a defendant does not raise an issue on direct appeal, it may be pursued on collateral review if a petitioner can demonstrate either "cause and prejudice" or "actual innocence." See, e.g., Berthoff v. United States, 308 F.3d 124, 127-128 (1st Cir.2002) ("a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence"), citing Bousley v. United States, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Here, Mr. Goldman does assert actual innocence—actual innocence of the predicate offense and actual innocence of being a career offender.

The Supreme Court has extended the actual innocence exception for the cause-and-prejudice test to the context of capital sentencing, meaning a petitioner who has committed the crime may, nonetheless, be "actually innocent" of the penalty of death. Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). As discussed in further detail *infra*, the Supreme Court has not yet decided whether the actual innocence exception applies in the non-capital sentencing context (deferring adjudication of the issue in Dretke v. Haley, 541 U.S. 386, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004)),

but three circuits have specifically concluded that it does apply to individuals who are "actually innocent" of state convictions that served as predicates for career offender sentences.

The Second Circuit, in Spence v. Superintendent Great Meadow Correctional Facility, 219 F.3d 162 (2d Cir.2000), and the Fourth Circuit, in United States v. Maybeck, 23 F.3d 888 (4th Cir.1994), "applied the concept of 'actual innocence' to the penalty phase of noncapital offenses, granting collateral relief to applicants who showed they in fact had not committed the crimes on which the calculation or imposition of their sentences was based." United States v. Poindexter, 333 F.3d 372, 381 (2d Cir.2003). The Fourth Circuit later modified Maybeck, holding that the actual innocence exception "applies in noncapital sentencing only in the context of eligibility for application of a career offender or other habitual offender guideline provision." United States v. Mikalajunas, 186 F.3d 490 (4th Cir.1999). The Fifth Circuit has joined the Fourth Circuit, holding that the actual innocence exception "applies to noncapital sentencing procedures involving a career offender or habitual felony offender." Haley v. Cockrell, 306 F.3d 247, 264 (5th Cir.2002). As such, as it relates to Mr. Goldman's claim of actual innocence of being a career offender, in the view of the Second, Fourth and Fifth Circuits, he does not have to establish "cause and prejudice" if the Court ultimately determines he is actually innocent.

A split within the circuits does exist, however. Three Circuits (Eighth, Tenth and Seventh) have held that the "actual innocence" exception does not apply to non-capital sentences. See generally Haley v. Cockrell, 325 F.3d 569 (5th Cir.2003) (dissenting opinion) (addressing circuit split); see Embrey v. Hershberger, 131 F.3d 739 (8th

Cir.1997); United States v. Richards, 5 F.3d 1369, 1371 (10th Cir.1993); Hope v. United States, 108 F.3d 119 (7th Cir.1997). To the Petitioner's best knowledge, the First Circuit has not yet resolved the issue.

In Dretke v. Haley, 541 U.S. 386, 388-89, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004), the Supreme Court had the opportunity to address whether the "actual innocence" exception to the cause and prejudice standard applied to noncapital sentences (as the Court has held the exception applies to claims of actual innocence of the underlying offense or, in the capital sentencing context, of the aggravating circumstances rendering the inmate eligible for the death penalty). See Murray v. Carrier, 477 U.S. 479, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986); Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), while acknowledging "that the concept of 'actual innocence' did not translate neatly into the capital sentencing context, [the Court] limited the exception to cases in which the applicant could show 'by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law.'" Dretke, 541 U.S. at 393, quoting Sawyer, 505 U.S. at 336.  However, because the Court concluded that the district court failed to consider alternative grounds for relief that potentially obviated the need to reach the actual innocence question, the Court deferred addressing the issue, vacating the judgment and remanding for further consideration. Dretke, 541 U.S. at 388-389.  It is worth noting, however, that three of the Justices dissented, concluding that the respondent had "been denied due process of law" and "because that constitutional error clearly and concededly resulted in the imposition of an unauthorized sentence, it also follows that respondent is a

4

'victim of a miscarriage of justice,' entitled to immediate and unconditional release." Dretke, 541 U.S. at 397, quoting Wainwright v. Sykes, 433 U.S. 72, 91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

In this case, Mr. Goldman is now clearly "actually innocent" of being a career offender. The predicate state conviction has been vacated. Moreover, and perhaps of paramount importance, Mr. Goldman from day one has maintained his innocence of the now-vacated predicate conviction. An affidavit from Mr. Goldman declaring his innocence and dated March 18, 1997 was appended to his original petition as Exhibit 6. His co-defendant in the 1977 state court matter, Robert Mondello, also prepared an affidavit, dated March 25, 1997, declaring Mr. Goldman's innocence of the 1977 charges. (Original Petition, Exhibit 7). As Judge Toomey found in his decision to vacate the predicate conviction, Mr. Goldman "sought, *ab initio*, to subject his conviction to the appellate scrutiny to which the law entitled him. He timely filed a notice of appeal; he timely sought appellate counsel, he timely sought sentence appeal; he timely sought revocation and revision. Each effort was blocked by the trial judge." (Toomey decision at 4-5, attached to Original Petition as Exhibit 2). Judge Toomey's conclusion that "justice may not have been done" was "compelled by the reality that defendant's desire to test the legitimacy of his conviction is not a recent contrivance, driven, as are many these days, by the hope that records have been lost, memories have failed and the evidence has been eroded by the passage of time." (Toomey decision at 4, attached to Original Petition as Exhibit 2).

In the face of these affidavits, in arguing that Mr. Goldman is not actually innocent of the state charges, the government has relied upon Judge Brogna's self-serving

5

declarations that Mr. Goldman's appeal was "frivolous" and that the evidence against him was "overwhelming." Judge Toomey specifically found, however, that "it is more than a bit troubling, that the trial judge," shortly after dismissing Mr. Goldman's post-conviction petitions in the Bristol County matter, "permitted the trial defense counsel to disappear and then obstructed appellate review of his own doings at the two week bench trial by concluding that the defendant was not to have a transcript because his proposed appellate claims were 'frivolous'." (Toomey decision at 5, n.2, attached to Original Petition as Exhibit 2). As Judge Toomey correctly observed, "[t]here is at least the appearance of self-serving animus in such rulings." (Toomey decision at 5, n.2, attached to Original Petition as Exhibit 2).

Wherefore, based on all of the foregoing, the Petitioner respectfully submits that he is excused from satisfying the "cause and prejudice" standard, given his claim that he is actually innocent of being a career offender and is actually innocent of the predicate offense.

II.     *Cause and Prejudice*.

To the extent the Court determines that the "actual innocence" exception does not apply to the facts of this case, and further concludes that the Petitioner must satisfy the "cause and prejudice" standard, the Petitioner respectfully requests additional opportunity to fully brief the issues. Today, a federal defendant can not attack a prior state court conviction at sentencing or within a §2255 motion (except convictions obtained in violation of the right to counsel). Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994); Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001). In Daniels, the Supreme Court held that "a federal prisoner may not

6

attack a predicate state conviction through a §2255 motion challenging an enhanced federal sentence." Daniels, 532 U.S. at 376, 121 S.Ct. 1578. Rather, the Supreme Court held, such an attack could only be made in the state court system. See Johnson, 125 S.Ct. at 1479. In Custis, decided in 1994, the Supreme Court concluded that a defendant could not collaterally attack state court convictions during sentencing hearings except for convictions obtained in violation of a defendant's right to counsel. Hence, today, there would be cause for the Petitioner's failure to raise the infirmity of the state conviction in his direct appeal or within any §2255 petition submitted prior to Judge Toomey vacating the Bristol County conviction because case law limits litigation of those issues to the state system. See, e.g., Andiarena v. United States, 967 F.2d 715, 718 (1st Cir.1992) (Cause exists when there is "some external impediment, such as government interference or the reasonable unavailability of the factual or legal basis for a claim"); McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The state of the law within the First Circuit at the time of the defendant's sentencing (March 1993) and original 2255 petition (1995) is not entirely clear, though the First Circuit did hold in United States v. Isaacs, 14 F.3d 106, 111 (1st Cir.1994), decided January 25, 1994, that state court convictions utilized to enhance federal sentences based upon the Guidelines (as contrasted with the Armed Career Criminal Act) could not be attacked at sentencing unless the prior conviction was "presumptively void." Nonetheless, even if further research reveals the Petitioner could have lawfully attacked the state court conviction at sentencing or within his original 2255 petition, and research further reveals that the law as it existed at that time controls the inquiry (as contrasted with the law as defined by Custis and Daniels), the issue then becomes whether counsel

7

were ineffective in failing to attack the predicate conviction in either of those forums, thus providing the Petitioner with cause. See, e.g., Dretke, 541 U.S. 386, 388-89, 124 S.Ct. 1847, 158 L.Ed.2d 659 (2004) (ineffective assistance of counsel provides cause for procedural default). If the Court believes a cause and prejudice analysis is necessary to resolve the instant petition, the Petitioner respectfully requests additional opportunity to fully brief the issues.[3]

III.     *There are no other "career offender" qualifying state convictions*.

The government's argument that a 1971 conviction qualifies for career offender purposes because the Petitioner was on parole until 1980, and he therefore was "incarcerated" within the 15 year pertinent period of time, is simply wrong. Application Note 3 to §4B1.2 specifically provides that the provisions of §4A1.1 are applicable to the counting of predicate convictions under §4B1.1. According to §4A1.1, a "sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted unless the defendant's incarceration extended into this fifteen-year period." U.S.S.G. §4A1.1, Application Note 1. The government makes the unsustainable argument that because Goldman was "under active parole supervision within 15 years" of his indictment in the underlying federal case (August 12, 1992), his January 6, 1971 conviction is "well within the time period referred to in §4A1.2(e)." (Government Opposition at 13-14).

Clearly, parole supervision does not qualify as "imprisonment" for purposes of §4A1.1, 4A1.2(e), or §4B1.1. Section 4A1.2(b) specifically provides that "sentence of

---

[3]. The actual prejudice suffered by Mr. Goldman appears to be manifest—having been wrongly sentenced as a career offender his sentence has been unlawfully significantly enhanced. Without the career offender status, Mr. Goldman's sentencing range would have been (at most) 168 to 210 months, but he was instead sentenced to 360 months imprisonment. (PSR at ¶¶56, 78).

8

imprisonment" means a sentence of incarceration and that it does not even include a suspended portion of the imprisonment. U.S.S.G. §4A1.2(B)(1),(2). Moreover, §4A1.2(k), which deals with the impact of revocation of parole upon the counting of prior sentences, advises that for purposes of counting sentences pursuant to §4A1.2(e)(1) (the provision cited by the government), the date of last release from incarceration on the sentence is utilized for purposes of determining whether the defendant has been released from imprisonment within the fifteen year period. The logical impact of this specific section is that parole status itself does not constitute imprisonment for purposes of counting prior sentences, otherwise this particular section lacks logical relevance. See also United States v. Gilcrist, 106 F.3d 297 (9th Cir.1997) (defendant paroled and therefore not "imprisoned" for relevant convictions). Not surprisingly, the government did not cite one case or guideline provision that supports its argument that parole status counts as imprisonment pursuant to §4A1.1, 4A1.2(e), or §4B1.1. It simply does not and the government's argument to the contrary should be rejected.

IV.  *Continued imprisonment constitutes a miscarriage of justice that should be remedied via 28 U.S.C. §2241.*

Section 2241 allows an individual to seek "judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistence offense", In re Davenport, 147 F.3d 605, 611 (7th Cir.1998); or in the "unusual circumstance" in which application of the AEDPA "second or successive" limitations would result in a "complete miscarriage of justice", In re Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997), or where a "petitioner cannot, for whatever reason, utilize §2255, and in which the failure to allow for constitutional review would raise serious constitutional questions", Triestman v. United States, 124 F.3d 361, 377 (2d Cir.1997). In this case, as noted *supra*, the

9

Petitioner is presently serving an enhanced criminal sentence predicated upon a state court conviction that has since been vacated, in part because of the unlawful deprivation of the Petitioner's statutory right to appeal and his constitutional right to the effective assistance of counsel during that appeal, and based upon a charged offense for which the Petitioner has always proclaimed his innocence. In United States v. Barrett, 178 F.3d 34, 49-50 (1st Cir.1999), the First Circuit agreed "with the Davenport, Dorsainvil, and Triestman courts that habeas corpus relief under §2241 remains available for federal prisoners in limited circumstances." Barrett, 178 F.3d at 52. In Barrett, the Court did not articulate those circumstances precisely, leaving that task for another day, because Barrett's claim did not raise questions of actual innocence, "as the post-Bailey claims of the petitioners in Davenport, Dorsainvil, and Triestman arguably did." Barrett, 178 F.3d at 52-53.

In this case, unlike Barrett, Petitioner does raise a claim of actual innocence-- actual innocence of being a career offender and actual innocence of the underlying state court conviction. Moreover, notwithstanding the government's protestations to the contrary, Little v. United States, 2002 WL 1424581 (D.Mass.2002), clearly supports the defendant's position herein. The government has confusingly argued that in Little the government agreed that the defendant was "actually innocent of having any prior convictions that supported an enhanced sentence", but here "the government strongly believes that there is no evidence of actual innocence and thus a comparison to Little is misguided and incorrect." (Government's Opposition at 13). The government seemingly conflates actual innocence of legally qualifying for an enhanced sentence and actual innocence of the underlying predicate offense. In this case, like Little, the defendant is

10

actually innocent of having any prior convictions that support a career offender sentence (because of the vacatur). While the government in this case might quarrel with the defendant's claim of actual innocence of the predicate offense, there can be no argument with the fact that the defendant is presently "actually innocent" of being a career offender—there are no existing qualifying convictions. Thus, like Little, all parties should eventually "agree that petitioner is 'actually innocent' of having any prior convictions which support an enhanced sentence." Little, 2002 WL 1424581, *2-3. As such, "allowing the illegal sentence to stand would represent a grave miscarriage of justice." Little, 2002 WL 1424581, *3.

V.   Conclusion

Wherefore, because forcing the Petitioner to serve the remainder of a sentence that was enhanced based upon a conviction that no longer exists, based upon a conviction that existed only because the trial judge unlawfully violated the Petitioner's statutory right to appeal and his constitutional right to the effective assistance of counsel during that statutory appeal, and based upon a conviction for a crime the Petitioner has always maintained his innocence, the Petitioner should be allowed to utilize §2241 to attack the validity of his sentence in the underlying federal criminal matter.

VI.   *Request for Evidentiary Hearing*

The Petitioner respectfully requests an evidentiary hearing on the issue of actual innocence.

                                        Frank Goldman,
                                        By his attorney,

                                        **/s/ Robert M. Goldstein**
                                        Robert M. Goldstein
                                        Mass. Bar No. 630584
                                        20 Park Plaza, Suite 903
                                        Boston, MA 02116
Dated: June 23, 2005                    (617) 742-9015

## CERTIFICATE OF SERVICE

     I, Robert M. Goldstein, hereby state that on this date, June 23, 2005, a true copy of the foregoing document has been served, via electronic filing, upon Nancy Rue, Assistant U.S. Attorney, United States Attorney's Office.


                                        **/s/ Robert M. Goldstein**
                                        Robert M. Goldstein