UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANKLIN M. GOLDMAN,    )
     Petitioner    )
            )
  v.         ) Civil No. 04-CV-12712-MLW
            )
DAVID L. WINN, WARDEN,    )
UNITED STATES OF AMERICA,   )
     Respondents

**Goldman's Memorandum in Response to Court Order of August 14, 2006
Regarding Cause and Prejudice**

I.  Introduction.

   There has been no procedural default of the claims presented in this case, and

therefore no need exists to satisfy the "cause and prejudice" requirements, because the

claims presented in this case could not have been presented at the time of Mr. Goldman's

direct appeal. Here, Mr. Goldman argues that he is actually innocent of being a career

offender and actually innocent of the criminal offense that served as the "career offender"

predicate, not that his state conviction did not qualify as a predicate conviction at the time

of his conviction.  Neither of these claims were available to Mr. Goldman at the time of

his direct appeal, as controlling case law precluded him from attacking the validity of his

predicate state court conviction. See United States v. Isaacs, 14 F.3d 106, 111 (1st

Cir.1994) (holding that state court convictions utilized to enhance federal sentences under

the Guidelines could not be attacked at sentencing unless the prior conviction was

"presumptively void.").  Hence, there was no procedural default of the claims.

   In any event, even assuming *arguendo* there has been a procedural default of the

claims presented, Mr. Goldman can clear the "cause and prejudice" hurdles. The

1

predicate state court conviction was not yet vacated at the time of Mr. Goldman's

sentencing and/or his direct appeal, and there therefore existed "some external

impediment, such as government interference or the reasonable unavailability of the

factual or legal basis for a claim." See Andiarena v. United States, 967 F.2d 715, 718 (1st

Cir.1992); Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571 (2005) (holding that

vacatur of prior conviction was properly characterized as "fact" for purposes of §2255

one-year filing deadline from "date on which the facts supporting the claim or claims

presented could have been discovered through the exercise of due diligence"). Hence,

Mr. Goldman's claims that he is actually innocent of being a career offender and actually

innocent of the predicate state court conviction were reasonably unavailable to him at the

time of his appeal.  Finally, the prejudice in this case is manifest, as Mr. Goldman is

serving a greatly enhanced sentence due to the invalid and now vacated predicate state

conviction.

II.      Factual and Procedural Background.

On April 27, 1993, as a result of a finding that he was a "career offender" pursuant to

§4B1.1 of the United States Sentencing Guidelines, Franklin Goldman was to serve 360

months incarceration. One of the predicate convictions for the career offender status cited

within the Presentence Report was a conviction in the Bristol Superior Court, on or about

August 5, 1977, for the offenses of kidnapping and attempt to commit a crime (extortion).

(PSR at ¶69).

The 1977 Bristol County conviction that served as a career offender predicate

resulted from a jury-waived trial before the Honorable Vincent R. Brogna ("Judge

Brogna", herein); attorney Jack I. Zalkind represented Mr. Goldman. On or about August

5, 1977, Judge Brogna found Mr. Goldman guilty of attempted extortion and kidnapping, and not guilty of committing the armed robbery. Judge Brogna sentenced Mr. Goldman to M.C.I. Walpole for a term of not more than (10) years nor less than five (5) years, and ordered said sentence to be served concurrently with a twenty-five (25) to forty (40) year sentence Mr. Goldman was serving at the time of this trial in the Bristol County matter.

On or about August 12, 1977, Mr. Goldman filed (*pro se*) a notice of appeal. On September 28, 1977, Mr. Goldman filed (*pro se*) three pleadings: (1) a motion for free transcripts, (2) a petition for Writ of Habeas Corpus ad Testificandum, and (3) a motion for appointment of counsel. On October 19, 1977, without a hearing and by letter to the clerk, Judge Brogna denied all three pleadings, stating, among other things, that Mr. Goldman's attorney of record had not been allowed to withdraw and said attorney had not requested transcripts and he "consider[ed] the claim of appeal to be completely frivolous." On November 1, 1977, approximately three weeks after denying Mr. Goldman's motions, Judge Brogna allowed attorney Jack I. Zalkind's motion to withdraw as counsel.

On or about April 14, 2000, Mr. Goldman filed a motion for new trial with respect to the Bristol County convictions, arguing therein that "the ineffective assistance of predecessor counsel and judicial error [] deprived the Defendant of his guaranteed right to appeal the criminal convictions" entered in that matter. The motion for new trial was heard by the Honorable Daniel F. Toomey, Associate Justice of the Superior Court ("Judge Toomey" and/or "motion judge", herein). Initially, Judge Toomey ruled that, "without addressing the question of trial defense counsel's effectiveness in advising the Defendant not to pursue his appeal, I allow in the interests of justice so much of this

motion as seeks to revive Defendant's appeal from his conviction and order that

Defendant's notice of appeal (initially filed on August 12, 1977) shall be deemed to have

been filed on September 27, 2000 and the requirements of the Massachusetts Rules of

Appellate Procedure now in effect shall apply to the processing of this appeal."

Thereafter, the Appeals Court vacated the entry of the appeal and remanded the matter,

ruling that "the assembly [of the record] was premature, there being no transcript or

reconstructed record." On July 5, 2001, a hearing was held with respect to the motion for

new trial.

In addressing "the vexing question of the remedy, if any, for the defendant's

faultless loss of his right to appellate review of his conviction", Judge Toomey held that

"justice may not have been done" and "a new trial is an appropriate, and perhaps only,

way to insure that the interests of justice—the defendant's personal interest and the

Commonwealth's institutional interest—are realized." (Ruling at 4). In said ruling, dated

October 15, 2001, Judge Toomey found that "justice may not have been done" because,

through no fault of his own and contrary to his wishes expressed consistently since the

time of this conviction (August 5, 1977), [Mr. Goldman] cannot be afforded the appellate

review to which he was, and is, entitled." "This conclusion is compelled", Judge Toomey

wrote, "by the reality that defendant's desire to test the legitimacy of his conviction is not

a recent contrivance, driven, as are many these days, by the hope that records have been

lost, memories have failed, and the evidence has been eroded by the passage of time.

Rather, defendant sought, *ab initio*, to subject his conviction to the appellate scrutiny to

which the law entitled him. He time filed a notice of appeal; he timely sought appellate

counsel; he timely sought sentence appeal; he timely sought revocation and revision.

Each effort was blocked by the trial judge." Judge Toomey also expressed "concern that

'justice may not have been done' because trial defense counsel, in omitting to pursue the

appeal desired by defendant, may have grounded his inaction on inappropriate

considerations." Judge Toomey wrote that as "expressed in both his 1999 affidavit and

his 1993 letter to defendant, trial defense counsel recollected that he regarded an appeal

to be unwarranted because defendant's sentences were concurrent with a much lengthier

sentence then being served." Judge Toomey found that "defense counsel does not appear

to have included, in his calculus as to the advisability of an appeal, the substantive merit

of such an appeal." Additionally, Judge Toomey wrote that defense counsel's

"subsequent withdrawal as counsel for defendant demonstrates that, despite defendant's

patent interest in pursuing an appellate challenge to the trial proceedings—as

demonstrated by the *pro se* claim of appeal, *pro se* motion for free transcript, *pro se*

motion for the appointment of counsel, *pro se* motion to revoke and revise and *pro se*

claim of sentence appeal—trial defense counsel was plainly disinclined to assist

defendant in obtaining the review defendant repeatedly sought." "Accordingly," Judge

Toomey found, defense counsel's "post-trial advice to defendant, which focused upon the

impracticality of an appeal rather than on its viability as a device to challenge the trial

doings, was consistent with his indisposition to an appellate effort."

III.    Argument.

   A.    "*Cause and prejudice*" *does not apply to claims based on post-appeal*
         *vacatur of qualifying state conviction*

"The background for our discussion is the general rule that claims not raised on

direct appeal may not be raised on collateral review unless the petitioner shows cause and

prejudice." Massaro v. United States, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003),

citing United States v. Frady, 456 U.S. 152, 167-168, 102 S.Ct. 1584, 71 L.Ed.2d 816

(1982); Bousley v. United States, 523 U.S. 614, 621-622, 118 S.Ct. 1604, 140 L.Ed.2d

828 (1998).  "The procedural-default rule is neither a statutory nor a constitutional

requirement, but it is a doctrine adhered to by the courts to conserve judicial resources

and to respect the law's important interest in the finality of judgments." Massaro, 538

U.S. at 504.

Here, Mr. Goldman clearly could not have raised the claim that he was actually

innocent of being a career offender on direct appeal because the claim did not exist—at

the time there existed a qualifying predicate conviction. Likewise, existing case law at the

time of Mr. Goldman's appeal precluded him from litigating the validity or merits of his

underlying conviction, i.e., his actual innocence of the predicate offense. On January 25,

1994, in United States v. Isaacs, 14 F.3d 106, 111 (1st Cir.1994), the First Circuit ruled

that state court convictions utilized to enhance federal sentences based upon the

Guidelines could not be attacked at sentencing unless the prior conviction was

"presumptively void." Mr. Goldman's appeal of his underlying federal conviction was

resolved after Isaacs. Additionally, PACER indicates that Mr. Goldman's statement of

issues were not filed until February 18, 1994, i.e., after Isaacs was decided, and his brief

was not filed until March 8, 1994, well after Isaacs had been decided. As such, Mr.

Goldman could not have raised the legal infirmity of the predicate conviction, or his

actual innocence thereof, in his direct appeal to the First Circuit.

In Isaacs, the government argued, and the First Circuit agreed, that the Sentencing

Guidelines do not provide a sentencing court independent authority to permit a collateral

challenge to the constitutionality of a prior conviction where the prior conviction is being

used to compute a defendant's Criminal History Category.  Isaacs, 14 F.3d at 108.

Relying on a revision to the pertinent Guideline section, namely Comment 6 to §4A1.2,

the Court ruled that the Commission intended to preclude collateral review of prior

convictions.  Isaacs, 14 F.3d at 109; see U.S.S.G. §4A1.2, comment (n.6) (Nov. 1, 1991).

The court then ruled that the Constitution allowed challenges based on "presumptively

void" convictions, which it defined as convictions that were facially invalid or an

allegation of a "structural error." Isaacs, 14 F.3d at 112; see Sullivan v. Louisiana, 508

U.S. 275, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993) (erroneous jury instruction on

reasonable doubt is structural error); see also Arizona v. Fulminante, 499 U.S. 279, 309,

111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (opinion of Rehnquist, C.J., for the Court)

(listing as examples of errors that are not subject to harmless error analysis: total

deprivation of the right to counsel at trial; judicial bias; unlawful exclusion of members

of the defendant's race from a grand jury; deprivation of the right to self-representation at

trial; and deprivation of the right to a public trial). Mr. Goldman's assertion of actual

innocence to the predicate conviction was not "presumptively void," but instead required

resolution of factual issues (as contrasted with being facially void).

Of course, several months later, the Supreme Court restricted Isaacs even further,

holding in Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517

(1994), that a defendant could not collaterally attack state court convictions during

sentencing hearings except for convictions obtained in violation of a defendant's right to

counsel. See United States v. Munoz, 36 F.3d 1229, 1237 (1st Cir.1994) (noting impact of

Custis on holding of Isaacs). Rather, the Court ruled that if Custis was successful in

attacking the state convictions in some other forum, such as through appropriate state

post-conviction procedures or federal habeas review, "he may then apply for reopening of

any federal sentence enhanced by the state sentences." <u>Custis</u>, 511 U.S. at 497.  Then, in

<u>Daniels v. United States</u>, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the

Court held that "a federal prisoner may not attack a predicate state conviction through a

§2255 motion challenging an enhanced federal sentence." <u>Daniels</u>, 532 U.S. at 376, 121

S.Ct. 1578. Rather, the Supreme Court held, such an attack could only be made in the

state court system. <u>See</u> <u>United States v. Johnson</u>, 544 U.S. 295, 304, 125 S.Ct. 1571,

1578 (2005).

When a defendant is lawfully precluded from bringing a claim on appeal, there is

no procedural default and no cause and prejudice requirement. For example, the Supreme

Court has ruled that a failure to raise an ineffective-assistance-of-counsel claim on direct

appeal does not bar the claim from being brought in a later, appropriate proceeding under

§2255.  <u>Massaro</u>, 538 U.S. at 507-509. In <u>Massaro</u>, the Supreme Court sided with the 10

Federal Courts of Appeals, including the First Circuit, that had taken the position that

there is no procedural default for failure to raise an ineffective-assistance claim on direct

appeal. <u>See</u> <u>Massaro</u>, 538 U.S. at 503, <u>citing</u> <u>United States v. Cofske</u>, 157 F.3d 1, 2 (1st

Cir.1998) (noting that defendant's claim of ineffective assistance of counsel "is not

cognizable in this direct appeal" and if "defendant believes that he has a viable claim, he

may raise it in a motion under 28 U.S.C. §2255"), <u>cert</u>. <u>denied</u>, 526 U.S. 1059, 119 S.Ct.

1374, 143 L.Ed.2d 533 (1999).

At the time Mr. Goldman's appeal was briefed and argued, the First Circuit had

already rejected his right to litigate the propriety of his predicate "career offender"

convictions in the sentencing court. As such, there was no procedural default in his

failure to litigate either his claim of actual innocence of being a career offender or his

claim of being actually innocent of the underlying predicate state conviction on direct

appeal. Wherefore, there was no procedural default in this case and there is therefore no

need to satisfy the "cause and prejudice" standards invoked by the government.

        B.      *Even if cause and prejudice analysis does apply to the present claim, these hurdles are satisfied in this case.*

Cause exists when there is "some external impediment, such as government

interference or the reasonable unavailability of the factual or legal basis for a claim." See

Andiarena v. United States, 967 F.2d 715, 718 (1st Cir.1992); McCleskey v. Zant, 499

U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Here, the factual basis for Mr.

Goldman's claims—i.e., that the predicate conviction has been vacated, was unavailable

at the time of Mr. Goldman's sentencing and appeal. The Supreme Court's recent

decision in Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571 (2005), confirms that

the proper characterization of the "claim" in this case for purposes of establishing

"cause" is the "fact" that the qualifying conviction has been vacated.  In Johnson, the

Supreme Court held that a state-court vacatur is a matter of fact for purposes of the rule

in the fourth paragraph of §2255, which allows inmate to file a §2255 petition within one

year from "(4) the date on which the facts supporting the claim or claims presented could

have been discovered through the exercise of due diligence." 28 U.S.C. §2255, ¶6. In

Johnson, the Court rejected the government's argument that "facts" for purposes of the

4th paragraph were facts supporting the argument to vacate the state conviction, noting

this would result in the anomaly that a defendant would potentially know those "facts"

before his federal case even began, and well before the need to file a §2255 petition

would arise, and would thus result in the 4th paragraph never being available to those

inmates. <u>Johnson</u>, 544 U.S. at 304-305.  The Court ruled:

> As for the Government's proposed reading, certainly it is true that the circumstances rendering the underlying predicate conviction invalid are ultimate subjects of fact supporting the §2255 claim, in the sense that proof of those facts (or the government's failure to negate them) is necessary to vacate the prior state conviction and eliminate the ground for the federal enhancement. But this is not enough to fit the Government's position comfortably into paragraph four. The text of § 2255, ¶ 6(4), clearly links the running of the limitation period to the discovery of the "facts supporting the claim or claims presented," but on the Government's view, the statute of limitations may begin to run (and may even expire) before the §2255 claim and its necessary predicate even exist. Prior to the federal conviction, a petitioner has no §2255 claim because he has no enhanced federal sentence to challenge; and prior to the state vacatur, which <u>Daniels</u> makes a necessary condition for relief in most cases, a petitioner cannot obtain relief under §2255. Hence, it is highly doubtful that in §2255 challenges to enhanced sentences Congress would have meant to start the period running under paragraph four on the discoverability date of facts that may have no significance under federal law for years to come and that cannot by themselves be the basis of a §2255 claim, <u>Daniels v. United States</u>, 532 U.S., at 376, 121 S.Ct. 1578.

<u>Johnson</u>, 544 U.S. 305 (parentheticals and citations omitted). The Court eventually ruled

that the vacatur of the prior conviction is indeed a "fact" for purposes of the 4th

paragraph:

> Johnson's argument improves on the Government's proposal by pegging the limitation period to notice of the state order eliminating the predicate required for enhancement, which is almost always necessary and always sufficient for relief. We do not find his proposal vulnerable to the point made by the majority of the Court of Appeals, that an order vacating a conviction is legally expressive or operative language that may not be treated as a matter of fact within the meaning of the statute. We commonly speak of the "fact of a prior conviction," *e.g.,* <u>Apprendi v. New Jersey</u>*,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and an order vacating a predicate conviction is spoken of as a fact just as sensibly as the order entering it. In either case, a claim of such a fact is subject to proof or disproof like any other factual issue.

<u>Johnson</u>, 544 U.S. at 306-307; <u>see</u> <u>id</u>. at 309 (also imposing due diligence requirement;

"diligence can be shown by prompt action on the part of the petitioner as soon as he is in

a position to realize that he has an interest in challenging the prior conviction with its

potential to enhance the later sentence").

      As the Supreme Court found in <u>Johnson</u>, the vacatur of a prior conviction can

appropriately be characterized as a "fact," and it was certainly unavailable at the time of

Mr. Goldman's direct appeal. Hence, there was "some external impediment," such as "the

reasonable unavailability of the factual or legal basis for [the] claim" that satisfies the

"cause" requirements. Critically, there are no grounds to believe there existed some

"tactical" or "intentional" decision to forgo some procedural opportunity, which normally

cannot constitute cause, <u>Reed v. Ross</u>, 468 U.S. 1, 13-14, 104 S.Ct. 2901, 82 L.Ed.2d 1

(1984).

      With regard to the "prejudice" prong, the actual prejudice suffered by Mr.

Goldman appears to be manifest—having been wrongly sentenced as a career offender

his sentence has been significantly enhanced. Without the career offender status, Mr.

Goldman's sentencing range would have been (at most) 168 to 210 months, but he was

instead sentenced to 360 months imprisonment. (PSR at ¶¶56, 78).

      In <u>Derman v. United States</u>, 298 F.3d 34, 45-46 (1st Cir.2002), the First Circuit

noted that, "[t]o be sure, the Supreme Court has not elaborated the precise definition of

the cause and prejudice standard for all claims." <u>See</u> <u>Amadeo v. Zant</u>, 486 U.S. 214, 221,

108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). The court then observed that it analyzed "the

issue of prejudice based on an examination of the record as a whole," and that the inquiry

"focuses on the likelihood that the jury, had it been asked the question, would have"

reached a certain result. <u>Derman</u>, 298 F.3d at 46.  The court has also noted that "[t]o

satisfy the prejudice prong, the petitioner must show that 'there is a reasonable

11

probability that the result of the trial would have been different.'" <u>Evicci v. Maloney</u>, 387

F.3d 37, 40 (1st Cir.2004), <u>quoting</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 289, 119 S.Ct.

1936, 144 L.Ed.2d 286 (1999) (internal quotation marks omitted), <u>see</u> <u>also</u> <u>United States</u>

<u>v. Frady</u>, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

   In <u>Glover v. United States</u>, 531 U.S. 198, 121 S.Ct. 696 (2001), the Supreme

Court held that there is no baseline or quantifiable increase in a defendant's sentence that

must be shown to establish prejudice under <u>Strickland v. Washington</u>, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984), but that a minimal increase of jail time can constitute

prejudice. In <u>Glover</u>, the defendant filed at §2255 petition, alleging that his counsels'

failure in the trial court and on appeal to press a Guideline grouping issue constituted

ineffective assistance of counsel.  <u>Glover</u>, 531 U.S. at 201.  In rejecting the Seventh

Circuit's precedent that held an increase of 6 to 21 months in a defendant's sentence was

not significant enough to amount to prejudice for purposes of <u>Strickland v. Washington</u>,

*supra,* the Court held that the Seventh Circuit was incorrect "to deny relief to persons

attacking their sentence who might show deficient performance in counsel's failure to

object to an error of law affecting the calculation of a sentence because the sentence

increase does not meet some baseline standard of prejudice," observing that relevant

"[a]uthority does not suggest that a minimal amount of additional time in prison cannot

constitute prejudice." <u>Glover</u>, 531 U.S. at 203.  "Quite to the contrary," the Court held,

"our jurisprudence suggests that any amount of actual jail time has Sixth Amendment

significance." <u>Glover</u>, 531 U.S. at 203.

   Transporting these concepts to the context of this case, <u>see</u> <u>Lynch v. Ficco</u>, 438

F.3d 45, 49 (1st Cir.2006) ("However, in this circuit, we have held that <u>Strickler v.</u>

Greene, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), requires a finding that if

a habeas petitioner can meet the prejudice standard needed to establish ineffective

assistance under Strickland, then the prejudice standard under the 'cause and prejudice'

showing to excuse a procedural default is also met"); Evicci v. Maloney, 387 F.3d at 40

("As this court has previously held, the prejudice standards of Strickland and Strickler are

essentially the same"), the prejudice in this case appears manifest. If not for the career

offender designation, Mr. Goldman's sentence would have been drastically lower, as

there were no other qualifying convictions.  See Goldman's Memorandum in Reply to

Government's Opposition to §2241 Petition at §III, pp.8-9. Without the career offender

status, Mr. Goldman's sentencing range would have been (at most) 168 to 210 months,

but he was instead sentenced to 360 months imprisonment. (PSR at ¶¶56, 78).

IV.    Conclusion

        Wherefore, for the foregoing reasons, as well as those articulated in his prior

pleadings, Mr. Goldman respectfully requests that his Petition be ALLOWED.


                                        Frank Goldman,
                                        By his attorney,

                                        **/s/ Robert M. Goldstein**
                                        Robert M. Goldstein
                                        Mass. Bar No. 630584
                                        20 Park Plaza, Suite 903
                                        Boston, MA 02116
                                         (617) 742-9015


Dated: September 15, 2006

14

## CERTIFICATE OF SERVICE

I, Robert M. Goldstein, hereby state that on this date, September 15, 2006, a true copy of the foregoing document has been served, via electronic filing, upon all registered parties.


**/s/ Robert M. Goldstein**
Robert M. Goldstein