UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANKLIN M. GOLDMAN,<br>      Petitioner | )<br>)<br>) |
| v. | ) Civil No. 04-CV-12712-MLW<br>) |
| DAVID L. WINN, WARDEN,<br>UNITED STATES OF AMERICA,<br>      Respondents | )<br>)<br>) |

**Goldman's Memorandum Regarding Jurisdiction**

Franklin M. Goldman ("Goldman") has filed a petition pursuant to 28 U.S.C. §2241, moving the Court for an order vacating the sentence imposed in criminal action number 92-10229-AMD, wherein Goldman was sentenced as a career offender based upon a predicate state court conviction that was never subjected to appellate review, that has since been vacated, and for which Goldman has always professed his innocence. The government has opposed Goldman's petition, arguing *inter alia* that §2241 is not a jurisdictional vehicle available to Goldman. For the reasons discussed *infra*, as well as those articulated in his original Petition and Incorporated Memorandum of Law, Goldman respectfully submits that §2241 remains available in the circumstances of this case, wherein he has asserted actual innocence of being a career offender, actual innocence of the predicate conviction that never became final and has now been vacated, and he has never before had a meaningful procedural opportunity to assert or vindicate his actual innocence in the Federal forum.[1]

---

[1] Goldman respectfully seeks leave of Court to file the instant motion one business day late. Goldman had deferred briefing the jurisdictional issue in the event the parties were able to reach a resolution in this case (an issue still not finally resolved). Given the government's filing on November 17, 2006, however, Goldman seeks leave of Court to file the instant jurisdictional memorandum one business day after the original briefing date of November 17, 2006. To the extent additional issues require additional research (as noted *infra*), Goldman will include additional search results in his December 22, 2006 submission.

      I.      <u>The constitutional importance of the safety hatch.</u>

Article I, §9, cl.2 of the United States Constitution provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." See <u>Hamdi v. Rumsfeld</u>, 542 U.S. 507, 525 (allowing "enemy combatant" to file habeas petition pursuant to §2241, noting that "[a]ll agree that, absent suspension, the writ of habeas corpus remains available to every individual detained within the United States," "[o]nly in the rarest of circumstances has Congress seen fit to suspend the writ," and that "[a]t all other times, it has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law."). In 1948, Congress enacted 28 U.S.C §2255, a purpose of which was "to change the venue of postconviction proceedings brought by federal prisoners from the district of incarceration to the district in which the prisoner had been sentenced," so that federal judges in the districts saturated with federal prisons would no longer be flooded with petitions. <u>In re Davenport,</u> <u>In re Davenport</u>, 147 F.3d 605, 609 (7th Cir.1998) (noting that pre-2255 "federal prisoners, like state prisoners, who wanted to mount a collateral attack on their convictions or sentences had to file a petition for habeas corpus in the district court for the district in which they were imprisoned"). In the original §2255, "Congress created a safety hatch: if section 2255 proved in a particular case not to be an adequate substitute for habeas corpus, the prisoner could seek habeas corpus." <u>Id</u>. In enacting the Antiterrorism Act, Congress retained the savings clause. <u>Id</u>. In <u>In re Davenport</u>, 147 F.3d 605, 608-609 (7th Cir.1998), Judge Posner, writing for the majority, opined that the safety hatch was born perhaps because the Constitution forbids the suspension of the writ of habeas corpus absent rebellion or invasion, and

2

"outright abolition of habeas corpus for federal prisoners might conceivably have been held to violate the Constitution," though the court noted that the legislative history for both statutes was "uninformative" and "scanty." Id. It certainly "must mean something." United States v. Barrett, 178 F.3d 34, 51 (1st Cir.1999); see In re Davenport, 147 F.3d at 609 ("[i]f in a particular case section 2255 as amended by the Act does not provide an adequate substitute for habeas corpus, the prisoner can seek habeas corpus, and so he cannot complain that the limitations in §2255 suspended whatever constitutional right he might have had, under the suspension clause or conceivably under the due process clause, to be allowed to seek habeas corpus.").

Certainly, the majority of the courts that have allowed the use of the savings clause to permit a §2241 petition to proceed have concerned post-Bailey claims. See, e.g., In re Davenport, 147 F.3d at 611; In re Dorsainvil, 119 F.3d 245, 251 (3d Cir.1997); Triestman v. United States, 124 F.3d 361, 377 (2d Cir.1997). However, an examination of these and other cases, as well as the historical roots of habeas corpus relief, supports the conclusion that §2241 it is not limited to cases concerning a change in law after the filing of a §2255 motion, such as that presented in the Bailey context. Instead, Goldman respectfully submits, §§2255 and 2241 should be construed in a manner that fairly effectuates the "essential function" of the habeas statutes, which is "to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." In re Davenport, 147 at 609; see Barrett, 178 F.3d at 51, 52 (noting that In re Davenport and In re Dorsainvil stressed that the petitioner had not had an earlier opportunity to raise his Bailey claim, and that the Triestman court found that such serious questions were raised where "a person ... can prove his actual

3

innocence on the existing record" and "could not have effectively raised his claim of innocence at an earlier time."). As articulated in his memorandum addressing the issue of "cause and prejudice", Goldman has had no prior opportunity to obtain a reliable judicial determination of the fundamental legality of his career offender sentence. As such, while Petitioner Goldman has found no controlling case that compels the Court to exercise jurisdiction in this case, Goldman respectfully contends herein that the historical roots of habeas corpus relief, the policies that underlie §2255 and §2241, and the intersection of these statutes, in combination, provide the Court with the power to exercise jurisdiction over Goldman's §2241 petition.

> II.  <u>Goldman has satisfied the prerequisites of §2241 jurisdiction—he has asserted his actual innocence and he has had no reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his sentence</u>.

While it has been settled that §2255 does not become inadequate simply because a petitioner is procedurally foreclosed by its gate-keeping requirements, the First Circuit, in agreement with virtually all other circuits, has held that §2241 remains available for federal prisoners in limited circumstances, though it has not yet articulated those circumstances precisely. <u>Barrett</u>, 178 F.3d at 52 ("We agree with the <u>Davenport</u>, <u>Dorsainvil</u>, and <u>Triestman</u> courts that habeas corpus relief under § 2241 remains available for federal prisoners in limited circumstances," but holding it was "not necessary in this case to articulate those circumstances precisely-we leave that task for another day). A review of the cases that have considered the continued availability of §2241 for federal petitioners reveals that the touchstone inquiry is an assertion of actual innocence and whether the petitioner has had a prior procedural opportunity to vindicate his argument.

4

For example, in In re Dorsainvil, 119 F.3d 245 (3d Cir.1997), the Third Circuit, addressing a Bailey claim, allowed the petitioner to proceed with a §2241 petition, after holding that he did not qualify under the amended §2255 for permission to file a second or successive petition. Concluding that "under narrow circumstances, a petitioner in Dorsainvil's uncommon situation may resort to the writ of habeas corpus codified under §2241," the court reasoned that Dorsainvil never had the opportunity to challenge his conviction under §924(c) pursuant to the Supreme Court's interpretation of §924(c) in Bailey. Id. at 251. The court stated that allowing §2241 to be used by someone in Dorsainvil's position "[was] hardly likely to undermine the gatekeeping provisions of §2255." Id.

In Triestman v. United States, 124 F.3d 361 (2d Cir.1997), the Second Circuit denied the petitioner's request to file a successive §2255 motion in which he asserted that he was not guilty of violating §924(c) in light of Bailey. Triestman, 124 F.3d at 366. Nonetheless, the Second Circuit agreed with Triestman that "if the 1996 Act has so changed §2255 as to render the familiar vehicle inaccessible in this case, the traditional habeas remedy is available," *i.e.*, §2241. Triestman, 124 F.3d at 373. The court concluded "that serious due process questions would arise if Congress were to close off all avenues of redress in such cases, especially when the prisoner could not have raised his claim of innocence-which appears on the record-in an effective fashion at an earlier time." Triestman, 124 F.3d at 379.

In re Davenport, wherein the Seventh Circuit decided petitions filed by two federal prisoners (Davenport and Nichols), is instructive in terms of dramatizing the distinction between federal prisoners who have and have not had a prior procedural

opportunity to advance their argument.  In ruling that Davenport could not utilize the savings clause to advance his argument that a 1981 burglary conviction improperly served as a predicate conviction that qualified him for an "armed career criminal" enhancement pursuant to 18 U.S.C. 924(e), the decisive factor was that Davenport had a prior opportunity to raise his claim on direct appeal or in his initial §2255 petition (but did not).  Ruling that "[t]he essential function is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence," the court ruled that "in the case of Davenport allowing him to seek habeas corpus is not needed to give him a reasonable opportunity to obtain a reliable judicial determination of that legality. He had a chance to raise the question about the 1981 burglary conviction when he appealed from his conviction for being a felon in possession and later when he filed a section 2255 motion challenging the conviction."  In re Davenport, 147 F.3d at 609.  The court ruled that Davenport "had an unobstructed procedural shot at getting his sentence vacated" in his direct appeal and first §2255 motion.  Id.  It is important to note for present purposes, however, that the Seventh Circuit did note that Davenport presented an argument that went "to the fundamental legality of [his] sentence[]."  Id.

In contrast, with regard to Nichols' claim, the court ruled that he could utilize §2241, noting that "Nichols could not use a first motion under [§2255] to obtain relief on a basis not yet established by law" and he "could not use a second or other successive motion to obtain that relief because the basis on which he seeks relief is neither newly discovered evidence nor a new rule of constitutional law.  In re Davenport, 147 F.3d at 610.  The court then noted that a "procedure for postconviction relief can fairly be termed

6

inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." Id. at 611.  The Seventh Circuit held that a "federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." Id.

The common thread running through these and other decisions addressing the use of §2255's safety hatch to employ §2241 as a jurisdictional vehicle is whether a petitioner had a meaningful opportunity to obtain a reliable judicial determination of the legality of his conviction or sentence, as well as an assertion of actual innocence.  See also United States v. Brooks, 230 F.3d 643, 649 (3d Cir.2000) (observing that "a common theme is evident in the circuit court opinions addressing the availability of §2241 in those cases in which recourse to §2241 is granted, the petitioner would have *no other means* of having his or her claim heard," and holding that §2255 was not inadequate or ineffective where the petitioner previously had a meaningful opportunity to present his claim to the district court) (emphasis in original); Reyes-Requena v. United States, 243 F.3d 893 (5th Cir.2001) (holding "that the savings clause of §2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first §2255 motion"); In re Jones, 226 F.3d 328 (4th Cir.2000) (holding petitioner could utilize §2241 to raise Bailey claim where there was viable claim of actual innocence and petitioner had not had an earlier procedural opportunity to raise the claim); Abdullah v.

Hedrick, 392 F.3d 957 (8th Cir.2004) (surveying relevant cases and noting that sister circuits found "that lack of an earlier opportunity to be an important factor in finding a potential due process violation").

As Goldman articulated in his memorandum addressing the issue of cause and prejudice, he has had no prior opportunity to raise his claim that he was actually innocent of being a career offender or that the career offender enhancement was premised upon a statutorily and constitutionally infirm state conviction because existing case law at the time of Goldman's appeal and first §2255 petition precluded him from litigating the validity or merits of his underlying conviction, *i.e.*, his actual innocence of the predicate offense, the statutory and constitutional infirm nature of the predicate offense, and his actual innocence of being a "career offender." On January 25, 1994, in United States v. Isaacs, 14 F.3d 106, 111 (1st Cir.1994), the First Circuit ruled that state court convictions utilized to enhance federal sentences based upon the Guidelines could not be attacked at sentencing unless the prior conviction was "presumptively void," defined as convictions that were facially invalid or an allegation of a "structural error." Isaacs, 14 F.3d at 112. Goldman's briefing and the resolution of his direct appeal occurred after the First Circuit decided Isaacs. As such, Goldman could not have raised the legal infirmity of the predicate conviction, or his actual innocence thereof, in his direct appeal to the First Circuit.[2]

Moreover, it appears that Goldman was precluded from litigating the infirmity of the state conviction that served as a predicate for the career offender finding in his first

---

[2] Several months later, the Supreme Court restricted Isaacs even further, holding in Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), that a defendant could not collaterally attack state court convictions during sentencing hearings except for convictions obtained in violation of a defendant's right to counsel. See United States v. Munoz, 36 F.3d 1229, 1237 (1st Cir.1994) (noting impact of Custis on holding of Isaacs).

8

§2255 petition, and his innocence thereof, by the doctrine of ripeness.[3] In <u>McCarthy v. United States</u>, 187 F.3d 622 (1st Cir.1998) (unpublished opinion), the defendant, concerned about the one year period of limitation in §2255, asked the district court to hold his §2255 motion in abeyance while he tried to vacate state convictions that qualified him as an armed career criminal. Holding that the district court did not abuse its discretion in refusing to hold the motion in abeyance, the court characterized the claim regarding his status as an armed career criminal as "unripe," noting that "[i]n the event that McCarthy succeeds in vacating his state court convictions, his contention that the Armed Career Criminal Act (ACCA) is inapplicable to him would become ripe." <u>McCarthy</u>, 187 F.3d at *1. The court noted that if and when he succeeded in attacking the predicate convictions in the state forum he could seek to reopen this §2255 proceeding and obtain a district court adjudication of that previously-raised claim. <u>See also</u> <u>Ernst & Young v. Depositors Economic Protection Corp</u>**.,** 45 F.3d 530, 535 (1st Cir.1995) ("While the doctrine [of ripeness] has a prudential flavor, a test for ripeness is also mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies. Consequently, although a court may, within stated limits, dismiss declaratory judgment actions in its discretion, a court has no alternative but to dismiss an unripe action.") (internal citations omitted); <u>Nutritional Health Alliance v. Shalala</u>, 144 F.3d 220, 225 (2d Cir.1998) ("Ripeness is a constitutional prerequisite to the exercise of jurisdiction by the federal courts. The Court, therefore, can raise the issue *sua sponte*." (internal citations omitted)); <u>Thomas v. City of New York</u>, 143 F.3d 31, 34 (2d Cir.1998) ("Because the ripeness doctrine is drawn both from Article III limitations on

---

[3] Goldman continues to research the controlling law in the First Circuit at the time of his original §2255 petition and will supplement the case law provided herein in or before his December 22, 2006 submission.

9

judicial power and from prudential reasons for refusing to exercise jurisdiction, the court can raise it *sua sponte,* and, indeed, can do so for the first time on appeal.") (internal quotation marks omitted); Cheffer v. Reno, 55 F.3d 1517, 1523 (11th Cir.1995) (holding that, even though "[n]either party raises the issue of ripeness[,]" it must be addressed because courts "do not have subject matter jurisdiction to address unripe claims").  Of course, in Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), the Court held that "a federal prisoner may not attack a predicate state conviction through a §2255 motion challenging an enhanced federal sentence." Daniels, 532 U.S. at 376, 121 S.Ct. 1578.  Rather, the Supreme Court held, such an attack could only be made in the state court system. See United States v. Johnson, 544 U.S. 295, 304, 125 S.Ct. 1571, 1578 (2005).

> III.   Goldman was denied his statutory right to appeal, his constitutional right to effective assistance of counsel on appeal, and the state conviction should be viewed as void *ab initio.*

When Goldman was sentenced in the criminal case underlying his instant petition, the predicate Bristol County conviction had not been subjected to the appellate review to which Goldman was statutorily entitled, nor did he receive the effective assistance of counsel on appeal to which he was constitutionally entitled.  See Commonwealth v. Frank, 425 Mass. 182, 184 (1997); Douglas v. California, 372 U.S. 353, 83 S.Ct. 814 (1963).  In addressing "the vexing question of the remedy, if any, for the defendant's faultless loss of his right to appellate review of his conviction," Judge Toomey held that "justice may not have been done" and "a new trial is an appropriate, and perhaps only, way to insure that the interests of justice—the defendant's personal interest and the Commonwealth's institutional interest—are realized." (Frank Goldman's §2241 Petition

10

and Incorporated Memorandum of Law at Exhibit 2 at 3, 4) (emphasis added).  Judge Toomey found that "justice may not have been done because, <u>through no fault of his own and contrary to his wishes expressed consistently since the time of this conviction,</u> [Goldman] cannot be afforded the appellate review to which he was, and is, entitled." (Exhibit 2 at 4) (emphasis added). "This conclusion is compelled," Judge Toomey wrote, "by the reality that defendant's desire to test the legitimacy of his conviction <u>is not a recent contrivance</u>, driven, as are many these days, by the hope that records have been lost, memories have failed, and the evidence has been eroded by the passage of time. <u>Rather, defendant sought, *ab initio*, to subject his conviction to the appellate scrutiny to which the law entitled him</u>. He timely filed a notice of appeal; he timely sought appellate counsel; he timely sought sentence appeal; he timely sought revocation and revision. Each effort was blocked by the trial judge." (Exhibit 2 at 4) (emphasis added).

Indeed, Goldman's Bristol County conviction is perhaps best viewed as void *ab initio*. Under the doctrine of abatement *ab initio*, death pending review of a criminal conviction abates not only the appeal but also all proceedings had in the prosecution from the inception.  See <u>Durham v. United States</u>, 91 S.Ct. 858, 860 (1971).  As the Fifth Circuit has observed, "when an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an 'integral part of our system for finally adjudicating his guilt or innocence.'"  <u>United States v. Pauline</u>, 625 F.2d 684, 685 (5th Cir.1980), <u>quoting</u> <u>Griffin v. Illinois</u>, 351 U.S. 12, 18 (1956); <u>see</u> <u>United States v. DeMichael</u>, 461 F.3d 414 (3d Cir.2006) ("the abatement rule is grounded in procedural due process concerns. When

11

a defendant dies pending an appeal, "'the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence.'"); United States v. Dwyer, 855 F.2d 144, 145 (3d Cir.1988) (reciting the traditional rule that a criminal conviction abates when the defendant dies prior to the resolution of his or her direct appeal). United States v. Pogue, 19 F.3d 663 (D.C.Cir.1994); States v. Oberlin, 718 F.2d 894 (9th Cir.1983); United States v. Morton, 635 F.2d 723 (8th Cir.1980). While Goldman obviously did not die pending appellate review, he was denied appellant review by the arbitrary and improper actions of the trial judge, through no fault of his own, which is analogous to a defendant denied appellate review due to death. Goldman's Bristol County conviction has never been subjected to an integral part of our system for finally adjudicating his guilt or innocence, and the conviction is therefore perhaps best viewed as void *ab initio*.

Goldman has consistently maintained his innocence of the Bristol County accusations. For example, in March 1997, Goldman submitted an affidavit under oath declaring his innocence of the state charges, averring that his only involvement in that matter was to respond to a phone call from Robert Mondello, requesting that he travel to an area on Route 24 to secure Mondello's abandoned vehicle and wait for the tow truck that had been called. (Affidavit of Frank Goldman, dated March 18, 1997, attached to Original §2241 Petition as Exhibit 6, at ¶2). According to Goldman's affidavit, he was working at the Budweiser facility in Cambridge, Massachusetts on the date and time the crimes were committed. (Exhibit 6 at ¶3-4). Indeed, at trial, Goldman called as defense witnesses Robert Buch and Robert Davinport, two employees of Budweiser at the time, who testified that Goldman was at work during the pertinent time periods, and they

produced his worksheet as evidence to support their testimony. (Exhibit 6 at ¶5). Additionally, in an affidavit dated March 25, 1997, Robert Mondello, a co-defendant in the Bristol County matter, averred under oath that Frank Goldman's only involvement in that case was to respond to his evening telephone call, requesting that Goldman travel to an area on Route 24 in Brockton, Massachusetts, to pick up Mondello's vehicle, which had been disabled on the highway. (Affidavit of Robert Mondello, dated March 25, 1997, attached to original §2241 Petition as Exhibit 7, at ¶4). Mr. Mondello asseverates in that affidavit that Frank Goldman was innocent of all three of those charges, and in no way had anything to do with the charged conduct. (Exhibit 7 at ¶5).

IV.     Conclusion.

Goldman has always claimed his innocence of the charged Bristol County crime and, because of the arbitrary and improper actions of the trial judge in that matter, he was summarily and conclusively denied his statutory right to appeal the conviction and his constitutional right to the effective assistance of counsel during that appeal. Moreover, it appears that Goldman has never had a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his career offender sentence.

The Supreme Court "has adhered to the principal that habeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). As such, notwithstanding the fact that statutory and judicial actions have produced "a 'qualified application of the doctrine of *res judicata*" in habeas corpus, id. at 319, quoting McCleskey v. Zant, 499 U.S. 467, 486 (1991), the Supreme Court "has consistently relied on the equitable nature of habeas corpus to preclude application of strict rules of *res judicata*," and has "held that a habeas court must adjudicate even a successive habeas

claim when required to do so by the 'ends of justice.'" <u>Schlup</u>, 513 U.S. at 319, <u>quoting</u> <u>Sanders v. United States</u>, 373 U.S. 1, 15-17 (1963).  "To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, th[e] Court explicitly ties the miscarriage of justice to the petitioner's innocence." <u>Schlup</u>, 513 U.S. at 321.  "[T]he fundamental miscarriage of justice exception seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." <u>Schlup</u>, 513 U.S. at 323.  Here, Goldman respectfully submits that §2241 provides the necessary jurisdictional vehicle to assert his claims of actual innocence of the Bristol County offense and actual innocence of the career offender enhancement, particularly where it appears he has never before been afforded a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his sentence.

               Franklin Goldman,
               By his attorney,

               **/s/ Robert M. Goldstein**
               Robert M. Goldstein
               Mass. Bar No. 630584
               20 Park Plaza, Suite 903
               Boston, MA 02116
                (617) 742-9015

Dated: November 20, 2006

## CERTIFICATE OF SERVICE

      I, Robert M. Goldstein, hereby state that on this date, November 20, 2006, a true copy of the foregoing document has been served, via electronic filing, upon all registered parties.

                                       **/s/ Robert M. Goldstein**
                                       Robert M. Goldstein