UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANKLIN M. GOLDMAN,<br>　　　　　Petitioner,<br>　v.<br><br>DAVID L. WINN,<br>UNITED STATES OF AMERICA<br>　　　　　Respondents. | Civil Action No. 04-CV-12712-MLW |

## GOVERNMENT'S PRE-TRIAL MEMORANDUM

### I.　Procedural Posture

On June 11, 2007, this Court determined that an evidentiary hearing was appropriate prior to deciding the legal question of whether Goldman, whose claim is procedurally defaulted under 28 U.S.C. § 2255, can nevertheless bring a petition under 28 U.S.C. § 2241 pursuant to the "savings clause" of § 2255 based on his assertion that he was "actually innocent" of a state court conviction that served as a predicate to a sentencing enhancement under the career offender provisions of the United States Sentencing Guidelines.  The Court determined that an evidentiary hearing might obviate the need to address this "difficult legal question," because if the Court concluded that Goldman could not meet the burden of establishing by clear and convincing evidence that he was "actually innocent" of the underlying crime, then the challenging legal issue would become moot.  Hearing Transcript 6/11/07 (TR) at 38; 45; 49; 52.  Additionally, the Court noted that holding the evidentiary hearing would avoid any further deterioration in the ability to create a record in the event that the Court of Appeals were to determine that an evidentiary hearing is appropriate.  TR 6/11/07 at 52.

### II.　The Facts Show that Goldman Admitted to the State Crime.

Goldman and two others, Francis Larkin and Robert Mondello, were convicted in Bristol Superior Court on August 5, 1977 of the November 24, 1975 kidnapping and attempt to extort of

Jeffrey Lopes. Larkin and Mondello were also convicted of armed robbery. Goldman was acquitted on the armed robbery charge. The convictions of Larkin and Mondello became final and are still of record.

On December 22, 1992, Goldman was found guilty of conspiring to possess cocaine with intent to distribute it and possessing cocaine with intent to distribute it. In Goldman's PreSentence Report (PSR), the probation officer described two armed robberies, two drug crimes, and a kidnapping and extortion crime committed by Goldman during the years 1968 through 1977. Of these crimes, only two were counted toward Goldman's criminal history, because of the aging rules of the Sentencing Guidelines. These two crimes were described as follows:

> (70)   The indictment states that on 11/24/75, Mr. Goldman did forcibly confine and imprison an individual with intent to cause him to be held to service against his will and did by verbal communication maliciously threaten an injury to the person with intent to extort money. The defendant was represented by Jack Zalkind.
>
> * * *
>
> (72)   According to the official version submitted by the prosecuting attorney, on 4/12/76, while an individual was walking to her dentist's office in Revere, MA, she was accosted by Frank Goldman and Anthony Chiopi who were wearing masks. Goldman showed a gun and attempted to force her diamond ring off. At that time, Ralph DeLeo drove up in a car, jumped out armed with a handgun, and, with Goldman, attempted to force the victim into the car. The victim became hysterical and screamed, which drew attention. Goldman and De Leo then drove off and picked up Chiopi. It is noted in the Massachusetts Department of Corrections file that Frank Goldman does not agree with this official version. The defendant was represented by William Franzese.

In response to these paragraphs of the PSR, Goldman did not object to these descriptions. Instead, he <u>admitted</u> these crimes. 92-10229-MA, Docket Entry 103, Defendant Frank Goldman's Objections to the Pre-Sentence Report and Sentencing Memorandum (April 14, 1993). Far from denying his involvement, or seeking to vacate the conviction at issue now, he

2

asserted that he committed both crimes while he was suffering from a drug addiction. Criminal Docket 103 at 20. Goldman stated through counsel: "The defendant committed these offenses over a short span of time in order to obtain money to feed his serious drug addiction." Id. Goldman was sentenced to 360 months incarceration on April 27, 1993.

On April 24, 1995, Goldman filed a pro se § 2255 petition. In that petition, he contested the actions of his trial attorney, Richard Egbert, for persuading Goldman not to testify at his trial. Criminal Docket 140. Although this pro se filing both criticized his trial attorney's performance and advice and also addressed the effect of the Sentencing Guidelines on his sentence, including both his "prior state court convictions from 1976 and 1977" on his sentence, he did not distance himself from his attorney's admission in response to the PSR that Goldman had committed each of these prior crimes. Goldman was clearly familiar with the details on the PSR and the impact that his prior state court convictions had had on his federal sentence. He described the effect in the § 2255. Id. He had written to his state court attorney, Jack Zalkind, asking Zalkind why he had recommended against appeal of the case, given the impact on the federal sentencing guidelines, and received a response to that letter dated July 20, 1993. See Petition, Exhibit 1, page 29 of 29. Clearly from this conduct, Goldman understood that the Lopes kidnapping conviction had caused an increase in his federal sentence. However, he did not seek to vacate the conviction in the state court. Additionally, he did not assert in his 1995 § 2255 Petition that his attorney's admission that Goldman had committed the state court crimes was inaccurate.

Goldman's failure to contest his involvement in the kidnapping during his 1995 Petition is not surprising: he had effectively admitted to his involvement in the crime only a few years before, during a chance encounter with the prosecutor. Attorney Francis M. O'Boy, now a criminal defense attorney, testified that he was an Assistant District Attorney in 1977 and he had

prosecuted Goldman, Mondello and Larkin for the kidnapping of Lopes.  Attorney O'Boy testified that he found Goldman to be an affable fellow, in contrast to the kidnapping victim, whom he found to be despicable.  Attorney O'Boy testified that his relationship with Goldman was cordial in the courtroom.   He further testified that he had had a conversation with Goldman about the Lopes kidnapping years after Goldman had completed his sentence and was out on release.  O'Boy testified that in June 1991, O'Boy was walking down Stuart Avenue when Goldman approached him.[1]  Goldman hailed down O'Boy, and offered to tell him what had really happened with regard to the kidnapping case.  Goldman told O'Boy that the reason that they had kidnapped Lopes was that Lopes had robbed a highstakes card game, and they had been sent down from Boston to get the money back.  While O'Boy could not remember the exact words used by Goldman, nothing in the conversation led O'Boy to believe that Goldman had not been involved in the crime or that Goldman was somehow innocent.

Goldman's § 2255 Petition was denied, appealed, and rejected on appeal and en banc. Goldman was represented by counsel during those proceedings. Nevertheless, there was no suggestion made in those proceedings that Goldman's kidnapping conviction was unjust.  The first indication that Goldman claimed innocence of the Lopes kidnapping arose on March 25, 1997.  On that date, Goldman procured the affidavit of Robert Mondello claiming that Goldman had not been guilty of the kidnapping.  However, although Goldman was represented by experienced counsel at that time,[2] the motion to vacate the Bristol County proceeding was not

---

[1] This was not the first time after the sentencing that O'Boy had been approached by Goldman.  O'Boy testified that he had run into Goldman a few years after the trial, after O'Boy had left the district attorney's office, when Goldman was up on a sentencing appeal.  There was no malice or hostility:  Goldman asked O'Boy if he could help him, and O'Boy told him that he could not, because he had left the DA's office.

[2] Court of Appeals Docket 97-1018, shows that Goldman was represented by Kimberley Homan of Sheketoff & Homan.

4

filed until April 14, 2000. The state court motion was granted in October 12, 2001, and the case was nolle pros'd on September 5, 2002. Still, the instant motion to vacate the federal sentence was not filed until December 17, 2004.

The government respectfully submits that from these facts, the Court cannot find that Goldman has met his burden of showing that he was actually innocent of the crime of kidnapping and extorting Jeffery Lopes. The facts show that Goldman admitted this crime in response to the PSR in 1993 (Docket 103), just as he had admitted the crime when he ran into the prosecutor four years earlier. Instead, Goldman first claimed innocence of the kidnapping more than *fourteen years* after the crime occurred, when he submitted his motion for new trial in April 2000. Based on this evidence, the government respectfully submits that the Court cannot find that Goldman has met the heavy burden of showing actual innocence.

### III.     Goldman's Delay Caused Prejudice to the Government.

Numerous witnesses in this matter had died and evidence became unavailable during the time that Goldman delayed bringing his claim:

1. Co-defendant Francis Larkin died on November 27, 2001.
2. Jeffery Lopes died on October 2, 2002.
3. Vincent R. Brogna, Superior Court Judge, died December 26, 2004.
4. The Seawood Company of Malden, the company from which Goldman was fired on November 24, 1975, was dissolved on December 31, 1990.

### IV.     Legal Issues

The government has addressed in previous filings the standards for prevailing on a Petition under § 2241. As set forth more thoroughly in the government's briefs at Docket 4, 14, and 18, the government respectfully asserts that Goldman cannot bring his claim under the savings clause of § 2255 both because the "actual innocence" provision of the savings clause

5

does not apply to a claim of innocence of a sentencing factor and because Goldman has failed to show cause for failing to assert his claims in a timely fashion.

Goldman fails the fundamental questions posed by the savings clause. First, Goldman must show that the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. As argued both at the June 11, 2007 hearing and in the government's brief at Docket 18, Goldman cannot make this showing. The statutory range for Goldman's sentence was 10 years to life, based on Goldman's prior drug conviction and the District Court's finding that Goldman was responsible for four kilograms of cocaine. See Third Addendum to PSR. Goldman's sentence of 360 months falls within the statutory range. Therefore, Goldman's continued detention is not illegal.

Moreover, § 2255 provided a fundamentally effective means for Goldman to challenge the fairness of his sentence after vacating his prior conviction. From at least the time of Goldman's sentencing on his federal drug charges on April 27, 1993, Goldman knew that the his two state convictions had greatly increased his federal sentence. Johnson v. United States, 544 U.S. 295, 309 (2005) (upon entry of the federal judgment, a defendant must diligently act to vacate an underlying conviction, in order for its vacatur to be timely under § 2255); see Docket 1-2, page 29 of 29 (7/20/93 letter from Goldman's counsel showing that Goldman knew state court convictions had increased federal sentence). Goldman therefore had a reasonable opportunity to challenge his federal sentence under § 2255, simply by filing a timely motion to vacate his state conviction. "Having a reasonable opportunity ends the inquiry." Tr. 6/11/07 at p.29. Goldman failed to do so, and therefore, his Petition should be dismissed.

Finally, even if the savings clause were otherwise available, Goldman would be required to show cause for failing to timely proceed. In Sustache-Rivera v. United States, 221 F.3d 8, 17

(1st Cir. 2000), the First Circuit addressed an argument that a petition should be permitted to proceed under § 2241 when it had been defaulted under § 2255.  In that case, the Court addressed whether the "cause and prejudice" standard would apply to such claims, and expressing found that it would.   According to the Court,  "It would be anomalous if procedurally defaulted claims falling within the savings clause of 2255 did not also have to meet a 'cause and prejudice' standard.  It would also be contrary to the legislative history of 2255, well laid out in Wofford, 177 F3d at 1239, ("there was no intent make the 2255 remedy any different in scope from the habeas remedy that had previously been available . . . .")

In the instant case, Goldman has made no effort to show cause for failing to diligently pursue vacatur of his state court conviction once he was aware that the conviction had the effect of increasing his federal sentence.  Such a showing is mandatory in order to invoke the savings clause.  Goldman's failure to make this showing requires dismissal of his Petition.

             Respectfully submitted,

             MICHAEL J. SULLIVAN
             United States Attorney

      By:  /s/ Nancy Rue
           NANCY RUE
           Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I, Nancy Rue, Assistant U.S. Attorney, hereby certify that the foregoing document has been filed through the Electronic Court Filing system
             /s/ Nancy Rue
             Nancy Rue
             Assistant United States Attorney

Date:   March 13, 2008