```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS


FRANKLIN M. GOLDMAN,            )
            Petitioner          )
                                )
       V.                       )     Civil Action No. 04-12712-MLW
                                )
DAVID L. WINN,                  )
UNITED STATES OF AMERICA,       )
            Respondents.        )
```

### United States' Response to Petitioner's Objection to Admission of Portions of Parole Records

The government respectfully submits this memorandum in support of the admission of statements the Petitioner made to the U.S. Probation Officers supervising his parole at the time of the 1975 kidnapping for which he makes his claim of actual innocence. [Exs. 25, 35]. The government contends that the statements were not compelled in violation of the Fifth Amendment and, even if they were, that the Court should nonetheless consider them in determining the Petitioner's actual innocence claim.

The leading case dealing with the Fifth Amendment in the context of statements made to a probation officer is Minnesota v. Murphy, 465 U.S. 420 (1984). In that case, the Court concluded that a defendant, who was required as a condition of probation to be "truthful...in all matters," had not been compelled to incriminate himself when he confessed to a prior rape and murder. Id. at 440. Accordingly, the confession could be used against him in a prosecution for those crimes. Id. The Court rejected

the claim that the defendant had been in a "classic penalty[1]" situation and as a result, his failure to invoke the privilege could not be excused. Id. at 434-35. The Court found nothing unlawful about the state requiring a probationer "to appear and discuss matters that affect his probationary status" noting that "such a requirement, without more, does not give rise to a self-executing privilege." Id. at 435. It is only when the state seeks answers to questions which would incriminate the probationer in a pending or later criminal prosecution and also "asserts that invocation of the privilege would lead to revocation of probation," that the probationer's statements will be deemed compelled without an invocation of his privilege. Id. The Court concluded that there was no evidence that the defendant confessed because he feared his probation would be revoked if he invoked the privilege or that he was told that he would be punished if he did so. Therefore, "we cannot conclude that [the defendant] was deterred from claiming the privilege by a reasonably perceived threat of revocation." Id. at 437-38.

    Similarly, in this case, there is no evidence the Petitioner was forced to choose between incriminating himself in a pending

---

[1] In the "penalty" cases, the government has compelled an individual to testify and has threatened some economic or other sanction if the Fifth Amendment privilege is invoked. See, e.g., Garrity v. New Jersey, 385 U.S. 493, 498-99 (1967)(individual threatened with termination from employment for exercising the privilege held not to have waived it by answering questions).

or later criminal prosecution or have his parole revoked for exercising his Fifth Amendment privilege.  The Court heard testimony that his parole conditions likely included a condition quite similar to that at issue in Murphy, that is, that the Petitioner was required to periodically report and to "provide complete and truthful information" information to his probation officer.[2]  Chief U.S. Probation Officer John Bocon testified that refusal to answer a probation officer's questions could result in a "range of possibilities" from a letter of reprimand to potential revocation of parole. [T. 3-20:48-49].  Retired U.S. Probation Officer Robert H. Parris also testified that revocation of parole was a possible consequence for a parolee's refusal to respond to a probation officer's questions. [T. 3-20:86-87]. Neither Bocon nor Parris were asked what would result if the refusal was grounded in an invocation of the parolee's Fifth Amendment privilege and, in any event, neither testified that refusal to answer a question would invariably result in

---

[2] A 2003 Certificate of Parole listing standard conditions was produced during the hearing by Chief Probation Officer Bocon. Standard Condition #5 provides: "You shall make a complete and truthful written report on a form provided for that purpose to your Probation Officer between the first and third day of each month and on the final day of parole.  You shall also report to your Probation Officer at other times, as your Probation Officer directs, providing complete and truthful information." [Exhibit N; T. 3-20:86]. Parris testified that he recalled that this condition was exactly the same in 1975. [T.3-20:86].

3

revocation.

Goldman was asked a number of questions about his conversations with his probation officer and, although he recalled that he was required to report various things such as changes in his address or his employment status, did not, for the most part, recall specific conversations. [T. 3-19:108-109, 118-19, 122-25]. He did not testify that he was told, or even that he believed, that his parole would be revoked if he invoked his Fifth Amendment privilege. Nor did he testify that he wanted to invoke his privilege.[3] The Petitioner here is in no different position than the defendant in Murphy, that is, there is simply no indication that the Petitioner was "deterred from claiming the privilege by a reasonably perceived threat of revocation." 465 U.S. at 439.

Case law suggests that the First Circuit would require the Petitioner to invoke his privilege, if that is what he wished to do. Thus, in United States v. Davis, 242 F.3d 49 (1st Cir. 2001), the defendant argued that a condition of supervised release requiring him to truthfully answer *all* questions about

---

[3] Before making his closing argument, Goldman's counsel advised the Court that he would not be recalling Goldman to the stand "to pursue the Fifth Amendment claim," stating that "Mr. Goldman has advised me that he did not wish to pursue that avenue of relief in terms of the parole record issue and so I would just relay that information to the court. But I won't be calling him nor will I be pursuing that any further than to the extent it's already been on the record." [T. 3-20: 110].

4

his use of aliases and falsification of identification would violate his Fifth Amendment privilege against self-incrimination. Id. at 51 (emphasis added). The probation officer had not yet asked the questions, and the defendant had not yet invoked the Fifth Amendment. Id. The First Circuit granted the government's motion for summary disposition and affirmed the sentence; it explained that the requirement to tell the truth to a probation officer, without more, does not constitute a threat of penalty for the exercise of a Fifth Amendment privilege. 242 F.3d at 52. The court noted that if the defendant's supervised release were revoked as a penalty for his legitimate exercise of his Fifth Amendment privilege, the defendant "remain[ed] free to challenge that action at the time it occurs." Id. "That eventuality, however, has not yet occurred," concluded the court. Id. Similarly, in United States v. York, 357 F.3d 14, 25 (1st Cir. 2004), the First Circuit upheld a supervised release condition requiring the defendant to submit to periodic polygraph testing as a means to ensure his participation in a sex offender treatment program. The court construed the district court's order as providing that the defendant's supervised release would not be revoked upon a valid assertion of the Fifth Amendment privilege during an examination and that it was therefore constitutional. In reaching this conclusion, the First Circuit applied the teachings of Murphy, finding that:

5

> Nothing in the Fifth Amendment mitigates the general obligation on probationers to appear and answer questions truthfully. Probation officers may demand honest answers to their questions, just as prosecutors may demand truthful answers from grand jury witnesses subpoenaed to testify. Further, because revocation proceedings are not criminal proceedings, [the defendant] will not be entitled to refuse to answer questions solely on the ground that his replies may lead to revocation of his supervised release. [Defendant's] probation officers, by requiring him to answer such questions, will not 'compel' him to incriminate himself within the meaning of the Fifth Amendment. Of course, [Defendant] will have a valid Fifth Amendment claim if his probation officers ask, and compel him to answer over his assertion of privilege, a particular question implicating him in a 'crime other than that for which he has been convicted.' But [Defendant] cannot mount a generalized Fifth Amendment attack on the conditions of his supervised release on the ground that *he will be required to answer probation officers' questions truthfully.*

357 F.3d at 24 (emphasis added)(internal citations omitted); see also Ainsworth v. Stanley, 317 F.3d 1, 6 (1st Cir. 2002) ("the reduced likelihood of parole for refusing to participate in the [sex offender treatment program] does not constitute a penalty sufficient to compel incriminating speech in violation of the Fifth Amendment") (internal quotation marks and citation omitted).

Failure to invoke the privilege against self-incrimination results in the loss of that privilege. Murphy, 465 U.S. at 427; Garner v. United States, 424 U.S. 648, 654 n.9 (1976)("an individual may lose the benefit of the privilege without making a knowing and intelligent waiver.") United States v. Monia, 317

U.S. 424, 427 (1943)("The Amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." (footnote omitted).

Moreover, most of the statements sought to be admitted against the Petitioner in the case at bar concern generally his employment status and why he was in the company of Ralph De Leo, an individual with a criminal record.  Neither subject would give rise to a criminal prosecution.[4]   The Court in Murphy suggested that the Fifth Amendment privilege would not even be available in

---

[4]The statements concerning Petitioner's employment status are relevant to refute his contention now that he was working for Anheuser Busch at the time the kidnapping occurred.  In the chronological entries, the Petitioner advised the probation officer on November 28, 1975,(three days after the money drop), that he had been fired from his job in Malden and that it was his intention to open up a plant shop with a partner. [Ex. 35].  In January 1976, he stated that began working for Anheuser Busch after Thanksgiving, which was November 27, 1975, [Ex. 26], and also after the kidnapping incident. Id.

The chronological entries also include a statement from the Petitioner claiming his innocence in connection with his April 1976 arrest for armed robbery.  Petitioner does not recall having a conversation with his probation officer about this, but in any event, concedes now that he was guilty of that crime. [T. 3-19:122, 124-125]. Apparently, the Petitioner felt no compulsion to incriminate himself with respect to that case.  Petitioner, with counsel present, also advised Mr. Parris that he was innocent of the kidnapping charges. [Ex. 25].  It does not appear that he was asked anything else about the kidnapping case, other than advising his probation officer of his next court date. [Ex. 35].

such circumstances, explaining that:

> The situation would be different if the questions put to a probationer were relevant to his probationary status and posed no realistic threat of incrimination in a separate criminal proceeding.  If, for example, a residential restriction were imposed as a condition of probation, it would appear unlikely that a violation of that condition would be a criminal act. Hence, a claim of the Fifth Amendment privilege in response to questions relating to a residential condition could not validly rest on the ground that the answer might be used to incriminate if the probationer was tried for another crime.  Neither, in our view, would the privilege be available on the ground that answering such questions might reveal a violation of the residential requirement and result in the termination of probation.  Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding.

Id. at 436 (citations omitted).

There is nothing in the record to indicate that the Petitioner asserted his privilege, and in any event, the nature of the employment statements themselves do not call for incriminating responses and do not suggest he had implicated himself in any crime. As noted above, the statements concerning his employment situation at the time of the 1975 kidnapping only become relevant when considered in the context of his alibi testimony for that crime.  As for the statements concerning his culpability for the 1975 kidnapping and the 1976 robbery, he proclaimed his innocence of all charges.

Petitioner's reliance on United States v. Saechao, 418 F.3d 1073 (9th Cir. 2005), is misplaced.  In that case, the

probationer's admission to the possession of a firearm- in violation of federal law as well as his probation conditions- was used against him in the subsequent federal prosecution for a violation of 18 U.S.C. § 922(g).  The Ninth Circuit determined that the defendant's probation condition requiring him to "promptly ... *answer all* reasonable inquiries," placed the defendant in a "classic penalty" situation and therefore, he was not required to invoke the privilege. Id. at 1078-79 (emphasis in original).  The Ninth Circuit distinguished the reporting condition in Murphy – to "be truthful in all matters"- as allowing the defendant to "remain silent as long as he was truthful when he spoke," while Saechao had no such "luxury." Id.

Even if Saechao were controlling here, which it is not, and even if a requirement to be "truthful in all matters" is materially distinct from being required to "answer all reasonable inquiries," the reporting condition in this case is more akin to the former, which the Court in Murphy upheld.  That is, Petitioner was required to provide "complete and truthful information" to his probation officer.  There was no directive as in Saechao to answer all inquiries.

Moreover, even if the Petitioner's statements were considered compelled, they are offered against him in connection with his claim of actual innocence in this section 2241 claim.  As the Court noted during the evidentiary hearing, a habeas court may

9

consider evidence that might otherwise have been excluded in the criminal trial. That is, as the Supreme Court explained in Schlup v. Delo, 513 U.S. 298 (1995):

> In assessing the adequacy of petitioner's showing [of actual innocence], therefore, the district court is not bound by the rules of admissibility that would govern at trial. Instead the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the probative force of relevant evidence that was either excluded or unavailable at trial. Indeed, with respect to this aspect of the *Carrier* standard, we believe that Judge Friendly's description of the inquiry is appropriate: The habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available after trial.'

513 U.S. at 327-28 (citing Judge Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi. L. Rev. 142, 160 (1970)). Thus, the relevant inquiry is one of "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998). Under Schlup, even illegally obtained, but reliable, evidence should be considered. See Kuhlmann v. Wilson, 477 U.S. 436, 454 n.17 ("Thus, the question whether the habeas petitioner can make the requisite showing must be determined by reference to *all* probative evidence of guilt or innocence.") (emphasis in original).

Even if the statements at issue were obtained in violation of the Fifth Amendment, which the government does not concede, it is appropriate, as Schlup provides, for the Court to nevertheless

consider them when making its determination as to actual innocence.  See Lott v. Coyle, 261 F.3d 594, 621 (6th Cir. 2001)(noting that habeas court could consider post-indictment confession obtained without counsel present which was suppressed at trial); see also Doe v. Menefee, 391 F.3d 147, 151, 170 n.20 (2d Cir. 2004)(investigator's testimony and notes containing hearsay statements of others considered in actual innocence claim; also noting that wiretap conversations could be considered "even though some of the statements contained on tapes might not be admissible at trial."); Osborne v. District Attorney's Office, 2008 WL 861890 at *21 (9th Cir. 2008)(written confession in parole application and oral confession at parole hearing relevant to actual innocence claim; holding that confessions did not foreclose defendant's right to post-conviction DNA testing of trial evidence).

   Petitioner has ignored the both the First Circuit case law on the issue of whether the statements were compelled and the Supreme Court standard concerning the evidence that a habeas court may consider in evaluating a claim of actual innocence.  Instead, Petitioner focuses entirely on whether the proceeding for which the statements are offered should be considered criminal for purposes of the Fifth Amendment protections.  The government submits that it should not.  "It is well settled that habeas corpus is a civil proceeding." Browder v. Director Dept of

Corrections of Illinois, 434 U.S. 257, 269 (1978); Flint v. Howard, 464 F.2d 1084, 1085-86 (1st Cir. 1972)("A petition for a writ of habeas corpus is an 'independent civil suit' rather than a part of the original criminal proceeding.")(state prisoner habeas)(citing, Heflin v. United States, 358 U.S. 415, 418 n.7 (1959)). It is certainly true that habeas proceedings involve an individual's liberty interest and may require recognition that the case giving rise to review is a criminal one. See O'Neal v. McAninch, 513 U.S. 432, 440 (1995)(noting that "although habeas is a civil proceeding, someone's custody, rather than mere civil liability, is at stake."). That said, however, various constitutional protections of criminal procedure have been found to have no application in habeas corpus proceedings. See, e.g. Coleman v. Thompson, 501 U.S. 722, 755-56 (1991)(habeas petitioner not constitutionally entitled to counsel); Pennsylvania v. Finley, 481 U.S. 551, 554 (1987)(accord); United States v. Hayman, 342 U.S. 205, 222-23 (1952)("[I]n accord with procedure in habeas corpus actions...," no constitutional requirement that petitioner in section 2255 proceeding be present); Oken v. Warden, MSP, 233 F.3d 86, 92-93 n.13 (1st Cir. 2000)(no constitutional right to confront witnesses or to testify in habeas proceeding).

   Certainly if a petitioner has no constitutional right to be present, no right to confront witnesses or to testify himself at a habeas proceeding, then that proceeding cannot be considered a

"criminal case," at which the Fifth Amendment would prevent introduction of his past statements. Additionally, to preclude the admission of the statements here would contravene the directive in Schlup to determine actual innocence "in light of all the evidence." 513 U.S. at 328. As reiterated by House v. Bell, 547 U.S. 518 (2006):

> Our review in this case addresses the merits of the Schlup inquiry, based on a fully developed record, and with respect to that inquiry Schlup makes plain that the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'
>
> Id. at 537-38(citations omitted.)

"All the evidence" in this case includes the Petitioner's statements to the probation officer at the time of the state kidnapping charges for which he is now claiming actual innocence. The Court should consider those statements when deciding whether the Petitioner has met his burden here.

13

**Conclusion**

For the reasons discussed above, the government submits that Petitioner's statements to U.S. Probation are admissible in this proceeding.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                  United States Attorney

                    By:   */s/ Sandra S. Bower*
                          SANDRA S. BOWER
                          Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 14, 2008.

                                  */s/: Sandra S. Bower*
                                  SANDRA S. BOWER
                                  Assistant U.S. Attorney

Dated: April 14, 2008